**George Donald HARDEBECK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 69A01–9407–CR–241.

Court of Appeals of Indiana.

Oct. 11, 1995.

Transfer Denied Dec. 13, 1995.

---

488

Susan K. Carpenter, Public Defender, Kenneth M. Stroud, Special Assistant to the State Public Defender, Cynthia M. Russell, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Suzann Weber Lupton, Arthur Thaddeus Perry, Deputy Attorneys General, Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

We are asked to decide whether George Donald Hardebeck was properly sentenced. Hardebeck murdered five members of his family and now appeals from the 240–year sentence imposed after convictions on his open pleas of guilty but mentally ill. The trial court sentenced Hardebeck to the presumptive 40–year term on one count and enhanced each of the other four counts by ten years to 50–year terms. The court ordered all sentences to be served consecutively for an executed term of 240 years.[1]

We affirm.

### ISSUES

Hardebeck presents three issues for review which we restate as follows:

1. Whether the 240–year sentence is manifestly unreasonable.

2. Whether the trial court's sentencing statement supports the 240–year sentence.

3. Whether the trial court added aggravating factors to its written sentencing order after the sentencing hearing and, thus, committed reversible error.

### FACTS

On August 24, 1993, George Hardebeck was at home with his mother (Martha), sister (Betty), two brothers (Marlin and Jimmy), and his brother-in-law (Virgil). Hardebeck felt that Betty was picking on him and obtained a pistol from his car. Hardebeck then returned to the porch where he had been sitting with members of his family. When Marlin approached, Hardebeck shot him. Hardebeck's head "felt funny," and he chased Betty and Virgil, shooting at each of them until they collapsed.

Hardebeck returned to the house where he had already shot and killed Jimmy and discovered that Marlin, although wounded, was holding a rifle. He and Marlin struggled for control of the rifle with Hardebeck gaining control. Hardebeck then pursued, shot and killed Marlin. Next, he moved Betty's body and her car to the barn.

Thereafter, Hardebeck shot his 73–year old mother, Martha, twice in the head, moved her body from the kitchen to a bedroom, covered her with a blanket, and mopped her blood from the kitchen floor. He moved Jimmy's body into the basement and hid the rifle in a woodpile. At that time, Hardebeck noticed car lights coming from inside the barn. Although wounded, Betty was attempting to drive away in her car. Hardebeck shot her again, causing her car to run into a tree. Hardebeck then changed his clothing, left his home, and threw his pistol from the window of his car while driving to Kentucky where he was later arrested.

### DISCUSSION AND DECISION

#### Manifestly Unreasonable Standard of Review

The Indiana Constitution grants this court its power to review and revise sentences in criminal cases to the "extent provided by rule." IND. CONST. Art. VII, § 6. This authorization was among the 1970 amendments to the Indiana Constitution which originated in the *Report of the Judicial Study Commission* (1966). *See* IND. CONST. Art. VII, § 4 and § 6.[2] The Commission explained that "the proposal that the appellate power in criminal cases include the power to review sentences is based on the efficacious use to which that power has been put by the Court of Criminal Appeals in England." *Report of the Judicial Study Commission*, Comment at 140 (1966).

The English system was established in 1907. Appellate review of a sentence in England is essentially de novo. On appeal, an English court may revise the sentence imposed by the trial court if it determines "that the appellant should be sentenced differently" for any offense and may "quash any sentence or order which is the subject of the appeal" and substitute for that trial court

---

1. We heard oral argument in Indianapolis on August 8, 1995.

2. These Amendments became effective on January 1, 1972.

sentence "such sentence ... or order as it thinks appropriate for the case." Criminal Appeal Act 1968, § 11(3); D.A. Thomas, Appellate Review of Sentences and the Development of Sentencing Policy: The English Experience, 20 Ala.L.Rev. 193, 196 (1968). The only limitation upon English appellate review of sentences is that the appellant may not be "more severely dealt with on appeal than he was dealt with by the court below." Criminal Appeal Act 1968, § 11(3).

■■■ While the English experience inspired the Judicial Study Commission recommendation for appellate review of sentences, unlike the English system, we do not conduct de novo review of a sentence or assess and reweigh the trial court's findings and conclusions. *See Bish v. State* (1991), Ind., 421 N.E.2d 608, 620. Indiana appellate courts have traditionally given trial courts broad discretion in sentencing and have been reluctant to modify a sentence on appeal, provided it falls within the statutory boundaries and there is no clear evidence of abuse. *See* J. Eric Smithburn, Sentencing in Indiana: Appellate Review of the Trial Court's Discretion, 12 Val.U.L.Rev. 219, 226 (1978). The rule on appellate review of sentences adopted by our supreme court continues that tradition as it imposes a stringent limitation on the scope of that review.[3] *See* Appellate Rule 17(B). Accordingly, while this court is routinely involved in the review of sentences, our standard of review remains highly deferential. The determination of the sentence to be given a particular defendant is normally left to the sound discretion of the trial court. *See Duvall v. State* (1989), Ind., 540 N.E.2d 34, 36.

■■■ In reviewing a sentence, we determine whether the sentence was authorized by statute and imposed after a properly conducted presentence hearing. *See e.g.,* IND. CODE § 35-38-1-3. If the sentence falls within those statutory limits, and it is not otherwise prohibited by our state or federal constitutions, Appellate Rule 17(B) allows this court to revise a sentence only upon a finding that the sentence is manifestly unreasonable. In applying this rule, we engage in

a two step procedure. In the first step, we determine whether the sentence is disproportionate, that is, whether the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Walton v. State* (1995), Ind., 650 N.E.2d 1134, 1136. If this court determines that manifest unreasonableness may be present, the second step of the analysis requires that we determine whether "no reasonable person could find such sentence appropriate to the particular offense and offender." *Id.* If such inappropriateness is found, this court will revise a sentence in order to make it reasonable. *Id.*

■■ Under the limited standard of review imposed by Appellate Rule 17(B), a trial court may impose any number of different sentences which fall within the statutory boundaries and which are, in effect, immune from revision on appeal. Under this regime, applying the procedure described in *Walton,* we cannot revise a sentence unless we are left with a firm conviction that a mistake has been made which is readily apparent and not subject to reasonable dispute.

### Issue One: Manifestly Unreasonable Sentence

Hardebeck contends that the 240–year sentence imposed by the trial court is manifestly unreasonable when his character, the nature of the offenses, and the imposition of consecutive sentences are taken into account. We cannot agree.

■■ Hardebeck urges this court to consider the various facets of his character including his dysfunctional family life, emotional and physical abuse by family members, his mental illness, his service in the Marine Corps, his lack of a prior criminal record, and his remorse for his crimes. Hardebeck emphasizes the possibility of his rehabilitation. He correctly asserts that the primary consideration of the trial court during sentencing is rehabilitation of the defendant. IND. CONST. Art. I, § 18; *Abercrombie v. State* (1981), Ind., 417 N.E.2d 316, 320.

**3.** Appellate Rule 17, effective January 1, 1990, replaced Appellate Review of Sentences, Rules 1 and 2, effective January 1, 1978. The text remained the same.

 Even assuming Hardebeck's assertions regarding his character and possible rehabilitation were true, when this court determines whether a sentence is manifestly unreasonable, we must consider not only the character of the defendant but also the nature of the offense. *See Walton*, 650 N.E.2d at 1136. On a rampage, Hardebeck committed five separate acts of murder. He pursued at least three of his victims and shot them several times. He shot his 73–year old mother twice in the head and after her murder, he moved her body to the bedroom and mopped her blood from the kitchen floor. He moved several of the bodies, hiding them in the basement and garden. He then fled the scene, disposed of the murder weapon and left the state. Therefore, the gravity of Hardebeck's offenses far outweighs his alleged "good character" and any prospect he may have for rehabilitation.

Hardebeck also argues that his sentence is manifestly unreasonable because the terms were ordered to run consecutively, resulting in a 240–year sentence. Again, we cannot agree.

Each count of murder carries a presumptive sentence of 40 years. *See* IND.CODE § 35–50–2–3(a). Indiana law permits enhancement of that presumptive sentence by as much as 20 years. *Id.* The trial court enhanced four counts by ten years, to fifty-year terms, and imposed the presumptive 40–year sentence on the other count. The court ordered all counts to run consecutively.

 The same statutory aggravating factors may be used to enhance a presumptive sentence and to impose consecutive sentences. *See* IND.CODE § 35–38–1–7.1(b). Indeed, the same single aggravating factor may be used to support both the enhancement of a presumptive sentence and the imposition of consecutive sentences. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077, 1092. Moreover, the supreme court has stated that multiple killings clearly support consecutive sentences served for each homicide. *Walton*, 650 N.E.2d at 1137.

The trial court found that Hardebeck had committed five separate acts of murder. During sentencing, the trial court concluded that the mitigating factors were outweighed by the aggravating factors. The aggravating factors included the age of one of the victims, Hardebeck's need for correctional and rehabilitative treatment, his risk of committing another crime, the emotional impact and damage on the victim's families, and the circumstances of the crimes. *See* IND.CODE § 35–38–1–7.1. The mitigating factors included his mental illness, lack of a prior criminal record and remorse. Based upon these mitigating factors, the court declined to impose the maximum enhanced consecutive sentence of 300 years allowed by law. We conclude that the aggravating factors considered by the trial court were supported by the evidence and that these factors, together with the multiple killings, fully support the imposition of the consecutive sentences for each murder. *See Walton*, 650 N.E.2d at 1137. The nature of Hardebeck's offenses justifies what is tantamount to a life sentence, and we cannot say that the 240–year sentence is manifestly unreasonable.

### Issue Two: Sentencing Statement

 Sentencing is conducted within the discretion of the trial court and the trial court's decision will be reversed only upon a showing of a manifest abuse of discretion. *Sims v. State* (1992), Ind., 585 N.E.2d 271, 272. The trial court is not required to state a basis for imposing the presumptive sentence for a conviction. *Hansford v. State* (1986), Ind., 490 N.E.2d 1083, 1093. However, when the court exercises its discretion to enhance a presumptive sentence, the record must disclose the factors the court considered to justify the imposition of an enhanced sentence. *Jones v. State* (1992), Ind., 600 N.E.2d 544, 548; *see* IND.CODE § 35–38–1–3(3) (if court finds aggravating or mitigating factors, it must make "a statement of the court's reasons for selecting the sentence that it imposes").

 There are two purposes for requiring the reasoned sentencing statement. One, it safeguards against the imposition of arbitrary and capricious sentences because it insures that the sentencing judge only considered proper matters when imposing sentence. *Scheckel v. State* (1995), Ind., 655 N.E.2d 506, 509. Two, the statement allows

a reviewing court to determine the reasonableness of the imposed sentence. *Id.* The court must identify all significant aggravating and mitigating factors, include a specific reason why each factor is mitigating or aggravating, and weigh the mitigating factors against the aggravating factors. *Sims,* 585 N.E.2d at 272. If the trial court performs these steps, and the sentence is not manifestly unreasonable, the sentence will be affirmed on appeal.

### A: Sufficiency of the Sentencing Statement

Hardebeck directs us to the trial court's written sentencing order issued after the sentencing hearing. He contends that the order is conclusory and that the aggravating factors are unsupported by an adequate recitation of the underlying facts. Thus, he maintains that the sentencing order does not support the imposition of a 240–year sentence. We disagree.

■■■ Hardebeck's exclusive reliance on the trial court's written sentencing order is misplaced. In reviewing the sufficiency of a sentencing statement this court is not limited to review of the written sentencing order but is required to look at the entire record including the sentencing hearing. *See Jones,* 600 N.E.2d at 548. The record must demonstrate that the trial court's determination was based upon consideration of the facts of the crime, the aggravating and mitigating circumstances involved, and the relation of the sentence imposed to the objectives which will be served by that sentence. *Sims,* 585 N.E.2d at 272.

■ During the sentencing hearing, the trial court enumerated the aggravating and mitigating factors, provided reasons for, and weighed those factors. As previously noted, the court found several valid aggravating and mitigating factors and the sentencing statement further provided specific reasons for those findings. For example, the court said:

I find as a further aggravating factor the enormous emotional damage and impact on the victims, the family of the victims in this case. Three young children of the Powers family. One member who is unable to care

for himself is left without the nurture of a mother and father.

We conclude the record reveals a sufficient statement by the trial court of its reasons for selecting the sentence it imposed. *See* IND. CODE § 35–38–1–3(3). Hardebeck has not shown error on this issue.

### B: Balancing of the Aggravating and Mitigating Factors

■ Next, Hardebeck asserts the trial court erred when it balanced the aggravating and mitigating factors. The court engaged in the balancing process only once and applied its conclusion that the aggravating factors outweighed the mitigating factors in all five counts. Hardebeck contends the court was required to make an individualized sentencing statement, that is, to specify and balance the aggravating and mitigating factors applied to each distinct count of murder. Again, we cannot agree.

In support of his argument, Hardebeck cites our supreme court's opinion in *Robey v. State* (1990), Ind., 555 N.E.2d 145. *Robey,* however, does not stand for the proposition that the trial court must make an individual sentencing statement for each count. Unlike the present case, *Robey* involved the sentencing of two defendants. The trial court used a single sentencing statement for both defendants, enhanced their sentences, and ordered their sentences to run consecutively. *Id.* at 152. Our supreme court found the sentencing statement insufficient because it was merely a recitation of statutory factors and was a blanket statement applied to two defendants without consideration of their individual characters and the specific nature of their offenses. *Id.*

The sentencing statement here applied only to Hardebeck and the trial court considered the specific nature and circumstances surrounding each count of murder. Further, the mitigating factors pertained to Hardebeck's character generally rather than to any specific count of murder. We conclude *Robey* does not apply in the instant case. The trial court was not required to balance the aggravating and mitigating factors separately with respect to each count. The court engaged in the evaluative process and suffi-

ciently articulated the factors it considered to inform Hardebeck of the reasons for his sentence and to make an adequate record for appellate review. *Duvall,* 540 N.E.2d at 36. The trial court satisfied the specificity requirement.

### C: Mitigating Factors

Although the trial court specifically found three mitigating factors, Hardebeck contends the court failed to acknowledge additional mitigating factors presented by Hardebeck. He asserts the court failed to consider the fact that the crime was the result of circumstances unlikely to recur, or to give sufficient consideration to his unstable family life and upbringing. We cannot agree.

■ Hardebeck correctly asserts that the failure to find mitigating factors which are supported by the record may give rise to the belief that they were overlooked and not properly considered. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1255. However, the trial court is not required to find the presence of a mitigating factor. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1374. Even when the existence of a mitigating factor has been argued by counsel, the court is under no obligation to explain why it has determined that the factor does not exist. *Id.* Further, the trial court is not required to agree with the defendant that a particular circumstance is a mitigating factor. *Sims,* 585 N.E.2d at 272.

■ From our review of the record, we find the trial court considered the evidence on mitigating factors presented by the defendant. The trial court made a clear sentencing statement and, as previously noted, found several mitigating factors. The record demonstrates that the court considered the expert testimony that Hardebeck lacked the propensity to commit further crimes but did not find that evidence persuasive. A trial court has discretion whether to find mitigating factors and, absent an abuse of discretion, this court will not remand for resentencing. *Id.* Hardebeck has not shown error on this point.

■ Nevertheless, Hardebeck argues that his lack of prior criminal history and his mental illness were not given sufficient weight by the trial court. The trial court is under no obligation to assign any particular weight to mitigating factors. *Carter v. State* (1990), Ind.App., 560 N.E.2d 687, 690, *trans. denied.* Hardebeck compares his circumstances to those of the defendant in *Christopher v. State* (1987), Ind., 511 N.E.2d 1019, where our supreme court found that the defendant's mental illness was given insufficient weight. *Id.* at 1023. In *Christopher,* the trial court failed to consider the defendant's mental illness as a mitigating factor even though there was substantial evidence to support that finding. *Id.*

■ Unlike in *Christopher,* the trial court here gave mitigating value to Hardebeck's mental illness, a schitzotypal personality disorder which allegedly contributed to his actions on the day of the murders. Moreover, there was evidence before the court which tended to establish that Hardebeck had a motive and that he deliberately killed his victims out of hatred or anger. Hardebeck "felt he was being picked on," methodically pursued his victims one after the other, concealed his victim's bodies, disposed of the murder weapon, and fled the scene of the crime. Therefore, we cannot say that Hardebeck's mental illness was given inadequate consideration. *See Barnes v. State* (1994), Ind., 634 N.E.2d 46 (defendant's mental illness was not given insufficient weight because other factors present which tended to show motive).

■ Finally, Hardebeck pled guilty to all counts. In *Scheckel,* our supreme court reiterated that a guilty plea demonstrates a defendant's acceptance of responsibility for the crime and at least partially confirms the mitigating evidence regarding his character. *Scheckel,* 655 N.E.2d at 511. A guilty plea further extends a benefit to the state and the victim or the victim's family by avoiding a full-blown trial. *Id.* Thus, a defendant who pleads guilty deserves to have a benefit extended to him in return. *Id.* Here, while the trial court did not identify Hardebeck's guilty pleas as a separate mitigating factor, the court did acknowledge Hardebeck's acceptance of responsibility for his crimes in its finding that he showed remorse. It is implic-

it in that finding that the court considered Hardebeck's guilty pleas and gave them mitigating value.

### Issue Three: Addition of Aggravating Factors

The written sentencing order, issued by the trial court after the sentencing hearing, listed the aggravating and mitigating factors considered by the court during sentencing. Hardebeck claims that the trial court added two factors to the sentencing order which were not clearly articulated during the sentencing hearing. He argues that the addition of the two factors constituted reversible error because: (1) the sentencing order is inconsistent with the trial court's sentencing statement during the sentencing hearing making it impossible to discern the court's true findings, and (2) he was deprived of his right to be present at his sentencing hearing.

The two factors Hardebeck claims were added to the order are the risk that Hardebeck would commit another criminal offense and Hardebeck's need for correctional and rehabilitative treatment in a penal institution. Contrary to Hardebeck's assertion that these factors were not considered, we conclude from our review of the record that the trial court did consider both these factors when sentencing. During the hearing, the trial court stated,

> The Court also considers it significant that when asked by defense counsel, uh, of Mr. Campbell, or Dr. Campbell I should say whether the defendant is at risk to commit another offense, it seemed to me that he hedged a bit, uh, and that his testimony was full of ifs and hopes.

Moreover, the trial court stated that it considered all evidence including both presentence investigation reports, one of which included Hardebeck's need for correctional and rehabilitative treatment in a penal institution as an aggravating factor. Based on the record, we can discern the court's true findings. Further, we cannot say Hardebeck was deprived of his right to be present at his sentencing hearing.

 Even if we were to assume that the trial court did not consider these factors during the sentencing hearing, Hardebeck has not shown that he was harmed. *See Burr v. State* (1986), Ind., 492 N.E.2d 306, 310. The trial court imposed a 240-year sentence during the sentencing hearing and merely reiterated that sentence in its written order. Hardebeck concedes in his brief that the trial court "specifically noted eight aggravating factors in the presence of the defendant and his counsel." Only one aggravating factor is needed to support an enhanced sentence. *Fugate*, 608 N.E.2d at 1374. Therefore, since the trial court imposed the 240-year sentence both at the sentencing hearing and in the written sentencing order, and the court identified sufficient aggravating factors for the imposition of the sentence, the alleged addition of other aggravating factors to the written sentencing order was harmless.

### CONCLUSION

The record demonstrates that the trial court sentenced Hardebeck based upon consideration of the facts of the crime, the aggravating and mitigating circumstances involved, and the relation of the sentence to the objectives which will be served by that sentence. *See Sims*, 585 N.E.2d at 272. This court may not reverse Hardebeck's sentence unless he can show the sentence imposed was a manifest abuse of discretion. *See Id.* He has not met that burden. Neither has Hardebeck shown the sentence to be manifestly unreasonable given the heinous nature of his crimes. On this record we believe it was reasonable for the trial judge to conclude it was necessary to confine Hardebeck for the remainder of his natural life. We hold that the trial court did not err when it imposed the 240-year sentence for Hardebeck's convictions on five counts of murder.

Affirmed.

ROBERTSON and RUCKER, JJ., concur.