**Aaron BROWN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 17A04–9504–CR–126.**

Court of Appeals of Indiana.

Dec. 29, 1995.

Rehearing Denied Feb. 21, 1996.

Transfer Denied April 24, 1996.

Susan K. Carpenter, Public Defender, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Aaron Brown appeals from the trial court's imposition of a 100 year aggregate sentence following his conviction for two counts of murder.

We affirm.

### ISSUES

Two issues are presented for our review:

1. Whether Brown was deprived of the privilege against self-incrimination when the trial court used his unwarned statements, made during the pre-sentence interview, as a ground for the imposition of an enhanced, consecutive sentence.

2. Whether Brown's sentence of 100 years was manifestly unreasonable in light of the considerable mitigation evidence presented at the sentencing hearing.

### FACTS AND PROCEDURAL HISTORY

On February 7, 1994, Brown was charged by information with the murders of Elizabeth Grueb, his biological mother, and Jeffrey Grueb, his step-father. He pled guilty without a plea agreement in September of 1994. Following a guilty plea hearing the trial court entered judgment on the plea. The evidence reveals that in the early morning hours of February 6, 1994, Brown, then 16–years old, lay in wait for his parents to return home from a party, and upon their arrival, murdered them with a shotgun. Shortly thereafter, Brown turned himself in to the authorities.

A lengthy sentencing hearing was held December 16, 1994, and the court issued its sentencing order that same day. Brown was sentenced to 50 years on each count of murder, to be served consecutively. Additional facts and procedural history will be provided as necessary.

### DISCUSSION AND DECISION

I. Privilege Against Self–Incrimination

Brown first contends that he was deprived of his privilege against self-incrimination when the trial court used unwarned statements made by Brown during the preparation of the pre-sentence report. Two of the six circumstances cited by the court to support Brown's enhanced sentence referenced specific statements made by Brown to the pre-sentence investigator. Specifically, in response to a question posed by the pre-sentence investigator, Brown stated that he would kill again under certain unspecified circumstances. Brown further made statements to the pre-sentence investigator regarding his lack of remorse.

Brown's argument has been expressly and repeatedly rejected by our supreme court. In *Limp v. State* (1983), Ind., 457 N.E.2d 189, the defendant made admissions during his pre-sentence investigation that were used to enhance his sentence. On appeal, Limp argued that he was denied his right against

self-incrimination because he was not advised of his right to remain silent prior to the pre-sentence interview. In rejecting Limp's argument and affirming his sentence, the court said

> ... the purpose of the pre-sentence interview was clear and the defendant knew or should have known that the information obtained might be relied upon to inform a sentencing determination. We conclude that the defendant's right against self-incrimination was not violated through the use, at sentencing, of information which the defendant volunteered.

*Limp*, 457 N.E.2d at 192. In *Gardner v. State* (1979), 270 Ind. 627, 388 N.E.2d 513, the defendant interposed the same argument raised in *Limp*, 457 N.E.2d 189. The supreme court held that Gardner's Fifth Amendment rights were not violated because the record contained many bases for the imposition of an aggravated sentence, Gardner's statements were volunteered, there was no coercion at the pre-sentence interview and he was advised of and understood the purpose of the pre-sentence report. *Gardner*, 388 N.E.2d at 519; *see also Lang v. State* (1984), Ind., 461 N.E.2d 1110, 1115 (In holding that the pre-sentence interview is not a critical stage of the proceeding requiring the presence of counsel, the court said "[n]o potential for incrimination is present and the final sentencing hearing itself is the proper forum for safeguards where counsel can point out any irregularities in the pre-sentence report.").

In the present case, Brown was repeatedly advised of his constitutional rights. At the initial hearing and particularly at the guilty plea hearing, Brown indicated his understanding and appreciation of those rights. After obtaining Brown's waiver to a trial by jury and establishing a factual basis for Brown's guilty pleas, the court advised him as follows:

> I do intend to, if you plead guilty, have the Probation Department conduct a Pre-Sentence Investigation and then file a written report with the Court and then hear evidence at a Sentencing Hearing. And at that time I will hear evidence and I will hear arguments before I determine what the sentences will be ...

(R. 463). Brown indicated that he understood the sentencing process and the role of the pre-sentence investigation. At the sentencing hearing, Brown indicated that he had received a copy of the pre-sentence report along with the supplemental materials, had reviewed them with counsel and had no material objections to the contents of those documents.

Based on the foregoing, we conclude that Brown's right against self-incrimination was not violated by the trial court's use of Brown's voluntary and uncoerced statements. In holding as we do, we do not hold that fundamental constitutional guarantees do not apply at the sentencing phase of criminal proceedings. Rather, we hold that when voluntary statements are made to a pre-sentence investigator, and the defendant is aware of the purpose of the pre-sentence report, has been fully advised of his or her rights, has been presented a copy of the report and has voiced no opposition to its contents, the trial court is justified in relying on such statements. In making its sentencing determination, the trial court properly considered statements Brown made during his pre-sentence interview.

## II. Manifestly Unreasonable Sentence

Brown next contends that his sentence was manifestly unreasonable in light of the considerable mitigation evidence presented by his defense. Because Brown's crimes were committed in February of 1994, and the 1994 amendment to I.C. 35–50–2–3 did not become effective until July 1, 1994, Brown was sentenced pursuant to the 1993 version of I.C. 35–50–2–3. That statute provides in pertinent part as follows:

> (a) A person who commits murder shall be imprisoned for a fixed term of forty (40) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances ...

I.C. 35–50–2–3(a) (1993). Brown was sentenced to an enhanced sentence of 50 years on each count of murder. These sentences were ordered to be served consecutively, totaling an aggregate 100 year sentence.

Brown argues specifically that the trial court did not sufficiently articulate several of the aggravating circumstances, did not assign adequate weight to the mitigating circumstances, failed to consider the evidence of Brown's affliction with fetal alcohol syndrome as a mitigating circumstance, and overall failed to contemplate Brown's general character when structuring his sentence.

■ We will not revise a sentence authorized by statute except where the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.Appellate Rule 17(B); *Brewer v. State* (1995), Ind., 646 N.E.2d 1382, 1386 [1] (citing *Fointno v. State* (1986), Ind., 487 N.E.2d 140, 145). If we determine that such manifest unreasonableness may be present, then we must determine whether no reasonable person could find such sentence appropriate to the particular offense and offender. *Brewer,* 646 N.E.2d at 1386 (citing *Fointno,* 487 N.E.2d at 145); *see also Holmes v. State* (1994), Ind., 642 N.E.2d 970, 973 (140 year aggregate sentence not manifestly unreasonable in light of aggravating circumstances and heinous nature of crime of murdering parents in presence of young siblings [2]).

■ The decision to increase or decrease a sentence is within the discretion of the trial court and will not be set aside unless it is manifestly unreasonable. *Holmes,* 642 N.E.2d at 973. When a trial court exercises its discretion to enhance a presumptive sentence, the record must disclose the factors the court considered to justify the imposition of an enhanced sentence. *Hardebeck v. State* (1995), Ind.App., 656 N.E.2d 486, 491. Furthermore, the same statutory aggravating factors may be used to enhance a presumptive sentence and to impose consecutive sentences. *Hardebeck,* 656 N.E.2d at 491. Indeed, the supreme court

has held that multiple killings clearly support consecutive sentences. *Walton v. State* (1995), Ind., 650 N.E.2d 1134, 1137.

■ The court cited the following (6) aggravating circumstances in support of the imposed sentence:

(1) Defendant Aaron Moran Brown is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility based upon the seriousness of the offenses,

(2) Defendant . . . has been and remains a member of a gang (the CPT gang),

(3) One of the murder victims was Defendant['s] . . . own mother,

(4) Defendant . . . committed these murders while lying in wait after planning them for several days,

(5) Defendant . . . does not exhibit or even express remorse for the killing of his stepfather Jeffrey Grueb, and

(6) As part of the Pre–Sentence Investigation process Defendant . . . has stated that he would again commit another murder under certain unspecified circumstances.

(R. 395–96). The trial court found the following mitigating circumstances:

(1) Defendant . . . has no history of prior delinquent activity or criminal activity,

(2) Defendant . . . is of youthful age, and

(3) Defendant . . . turned himself into law enforcement authorities promptly after committing these murders and once apprehended has been cooperative with law enforcement authorities.

(R. 396). The trial court found the aggravating circumstances to outweigh the mitigating circumstances.

In addition to the sentencing order, the court articulated the aggravating and mitigating circumstances on the record at the

---

**1.** The supreme court in *Brewer* reduced Brewer's sentence from the maximum 60 year sentence for murder to 50 years, finding that the sentence was unreasonable considering the character of the offender. Specifically, the court found that the trial court failed to assign sufficient weight to the mitigating circumstance that Brewer surrendered himself to authorities after 15 years of successfully escaping punishment for his crime. *Brewer,* 646 N.E.2d at 1386.

**2.** The State sought the death penalty in this case; however, the jury recommended against its imposition. The trial court sentenced Holmes to sixty years on each murder count and 20 years for attempted robbery. The sentences were ordered to be served consecutively. *Holmes,* 642 N.E.2d 970.

sentencing hearing. It is readily apparent to us, from the sentencing statement made on the record coupled with the sentencing order and sheer volume of pre-sentence material, that the trial court put considerable thought and deliberation into the length and structure of Brown's sentence. It is further evident that the trial court exhibited heartfelt compassion for Brown, the circumstances under which he found himself, and the unfortunate struggles throughout his childhood and adolescence. The court made specific reference to the many mitigating circumstances in this case, such as: Brown's youthful age, 16 at the time of commission of the crimes and 17 at the time of sentencing; that Brown's mother was an alcohol abuser; that Brown had a significant history of psychiatric referrals and diagnoses due to his behavioral problems; that Brown was being administered anti-depressant medication at the time of sentencing; that Brown had no criminal history; that Brown's step-father was verbally abusive to him; that Brown did not know his biological father; that Brown turned himself in to the authorities promptly following the commission of the crime; that Brown was and continued to be cooperative with law enforcement authorities and the judiciary. After reciting the factors which the court considered in mitigation, and specifically noting Brown's attitude of cooperation, the court advised Brown as follows: "Obviously, that's in your favor and your sentences will not be as extreme because of that fact. So I'm giving you something for that and you deserve it by being cooperative after it happened." (R. 619).

This is not a case in which the court failed to consider an established mitigating factor or relied upon aggravators in a conclusory fashion. Rather, the court here considered the many well-founded aggravating circumstances which were supported by the evidence along with the mitigating circumstances, and concluded that the aggravating circumstances outweighed the mitigating circumstances. The trial court was in the best position to assign the appropriate weight to the aggravating and mitigating factors, and we will not disturb its discretionary decision. *See Sims v. State* (1992), Ind., 585 N.E.2d 271, 272 (sentencing decisions rest within the sound discretion of the trial court); *see also Hurt v. State* (1995), Ind., 657 N.E.2d 112 (defendant's 90 year aggregate sentence for murder and rape not manifestly unreasonable).

Based on the court's sentencing order and the court's explicit and articulate comments to the defendant at the sentencing hearing, we have no hesitation in finding that the court considered and weighed the mitigating factors appropriately. *See Hardebeck*, 656 N.E.2d at 493 (trial courts are under no obligation to find the existence of a mitigating factor, nor are they under an obligation to assign any particular weight to mitigating factors which they do find exist). Considering the nature of the offense, the character of the offender and the many aggravating factors, Brown's sentence is not unreasonable.

### CONCLUSION

Based on the foregoing discussion, the trial court properly considered Brown's statements as recorded in the pre-sentence report that he would kill again under certain unspecified circumstances and that he had no remorse for the killings. Additionally, Brown's aggregate sentence is not manifestly unreasonable. The trial court properly considered and weighed as it saw fit the mitigation evidence presented by Brown's defense.

Accordingly, Brown's 100 year sentence is affirmed in all respects.

DARDEN and FRIEDLANDER, JJ., concur.