ATTORNEYS FOR APPELLANT

Steven J. Halbert
Carmel, Indiana

Ann Marie Sutton
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Steve Carter
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General

Zachary J. Stock
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 10 2009, 10:35 am

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 49S02-0809-CR-508

STEVEN MCCULLOUGH,　　　　　　　　　*Appellant (Defendant below),*

v.

STATE OF INDIANA,　　　　　　　　　*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G17-0706-FD-102219
The Honorable Annie Christ-Garcia, Judge

On Transfer from the Indiana Court of Appeals, No. 49A02-0711-CR-931

**February 10, 2009**

**Dickson, Justice.**

We grant transfer and hold (1) in the exercise of the appellate authority to review and revise criminal sentences, a court may decrease or increase the sentence; (2) the State may not by appeal or cross-appeal initiate a challenge to a sentence imposed by a trial court; and (3) if a defendant seeks appellate review and revision of a sentence, the State may respond and urge the imposition of a greater sentence without the necessity of proceeding by cross-appeal.

The defendant, Stephen McCullough, was convicted of class C felony Criminal Confinement, class D felony Criminal Confinement, and class A misdemeanor Battery, and was found to be a habitual offender. The trial court had ordered a two-year sentence for each of the two confinement convictions and one year for the battery conviction, all to be served concurrently, plus a four-year habitual offender enhancement, for a total sentence of six years, two of which would be served in the Department of Correction and four years in a community correction facility. In this direct appeal, he raises claims of insufficient evidence and double jeopardy but does not seek appellate review of his sentence. The State has cross-appealed, asserting that the trial court abused its discretion in balancing the aggravating and mitigating factors and that the sentence imposed for the class C felony and habitual offender counts were inappropriately lenient in light of the nature of the offense and the character of the offender. The Court of Appeals held that (1) the convictions were supported by sufficient evidence; (2) the class D felony confinement conviction must be vacated on double jeopardy grounds; (3) the Indiana Constitution's provision authorizing appellate courts to review and revise criminal sentences specifically contemplates that an appellate court could impose a more severe sentence; and (4) the State may not by cross-appeal challenge a defendant's sentence for abuse of discretion or inappropriateness unless the defendant appeals his sentence. McCullough v. State, 888 N.E.2d 1272, 1276-81 (Ind. Ct. App. 2008). While vacating the conviction and concurrent sentence for class D felony confinement, the Court of Appeals affirmed the trial court's resulting enhanced sentence as to the other counts. Id. at 1282. We granted transfer to address whether an appellate court may increase a sentence and whether the State may by cross-appeal initiate a challenge to the trial court's sentence. As to the issues of evidence sufficiency and double jeopardy, we summarily affirm the decision of the Court of Appeals. Ind. App. R. 58(A)(2).

**1. Imposing Longer Sentences on Appellate Review**

We first consider whether an appellate court, in reviewing and revising a criminal sentence pursuant to authority derived from Article 7, Section 4 of the Indiana Constitution, may impose a more severe sentence than was ordered by the trial court. Section 4 provides in pertinent part: "The Supreme Court shall have, in all appeals of criminal cases, the power . . . to review and revise the sentence imposed." In addition to Section 4, Article 7 also includes

2

Section 6, which authorizes the Court of Appeals to "exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by rules which shall, however, provide . . . to the extent provided by rule, review and revision of sentences for defendants in all criminal cases." The review and revise authority for the Supreme Court and the Court of Appeals was implemented by the adoption of Indiana Appellate Rule 7(B). *See* Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007).

When it is necessary to interpret our state constitution, we look to "the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." State v. Monfort, 723 N.E.2d 407, 409 (Ind. 2000) (internal quotation marks omitted); *see also* Alpha Psi Chapter v. Auditor of Monroe County, 849 N.E.2d 1131, 1135 (Ind. 2006); State v. Gerschoffer, 763 N.E.2d 960, 965 (Ind. 2002); Ajabu v. State, 693 N.E.2d 921, 929 (Ind. 1998).

The text of Section 4 provides no explicit direction as to whether the power to revise a sentence authorizes sentence increases as well as reductions. We thus look to the intent of its framers and the history surrounding its drafting and adoption. Section 4 was part of a constitutional amendment that was ratified by the voters in 1970, to become effective in 1972, as part of the rewritten judicial article, Article 7. The new judicial article, including the appellate review and revise authority, resulted from the efforts of the Judicial Study Commission, created by the Indiana General Assembly to study the needs of the state for revision of the judicial system, to continuously survey and study the judicial system's operation, and to submit suggestions or recommendations for changes to the judicial system. Act of March 3, 1965, Ch. 47, 1965 Ind. Acts 77. The Commission's work on the revised Article began in 1965 and culminated with its 1966 proposal of the new judicial article.

At the December 9, 1965, first meeting of the Judicial Study Commission, a three-member committee, consisting of C. Ben Dutton, chairman, Representative Robert V. Bridwell and William M. Evans, was assembled to recommend changes to the existing judicial article.

3

Minutes from the Organization Meeting of the Judicial Study Commission, at 4 (Dec. 9, 1965).[1] By April 27, 1966, the Commission had adopted a formal resolution "that the committee heretofore appointed to draft an amendment of the judicial article in the Indiana Constitution is requested to draft a general judicial article embracing the full scope of the judiciary instead of specific changes in separate amendments." Minutes from a Meeting of the Judicial Study Commission, at 2 (Apr. 27, 1966).

The Commission's minutes and reports reveal little as to the Commission's intent regarding the precise nature and operation of the review and revise power, but these sources provide persuasive evidence that the Commission's inclusion of the review and revise authority derived from the 1962 American Bar Association ("ABA") Model Judicial Article. At an early meeting of the Judicial Study Commission, Dutton recommended, with regard to the judicial article, that the work should "[s]tart with the model article." Minutes from a Meeting of the Indiana Judicial Study Commission, at 2 (May 17, 1966).

In the Commission's proposed revision of Article 7, the operative text of both Sections 4 and 6 include language that substantially corresponds to the ABA model article. Both the proposed Section 4 and Section 2, Paragraph 2(B) of the ABA model article grant appellate power "to review and revise the sentence imposed." *See* Text of the ABA Model State Judicial Article, *reprinted in* 47 J. Am. Judicature Soc'y 6, 9 (June 1963). And the Commission's proposed Section 6 substantially mirrors Section 3 of the ABA version. Both provisions would authorize the Court of Appeals to "exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by rules" that include the authority to review and revise sentences in criminal cases. *Compare id. with* 1966 JUDICIAL STUDY COMM'N REP. 141.

---

[1] In addition to Dutton, Bridwell, and Evans, the full Commission at the time of the organizational meeting also included Rep. Robert D. Anderson, Sen. F. Wesley Bowers, Rep. John W. Donaldson, Carl M. Gray, Sen. A. Morris Hall, Gilmore S. Haynie, Sen. Eldon F. Lundquist, Rep. David P. Metzger, and Sen. Leonard Opperman. Minutes from the Organization Meeting of the Judicial Study Commission, at 4 (Dec. 9, 1965). And the Commission's 1966 report also lists as members Sen. William W. Erwin and Dr. Herman B Wells. 1966 JUDICIAL STUDY COMM'N REP. Other Commission members are identified in either the Commission's 1967-68 Biennial Report or its 1970 Report: Sen. Robert J. Fair, Rep. Elwood H. Hillis, Sen. Marshall F. Kizer, Sen. John M. Ryan, Rep. Harry B. Spanagel, Rep. Bernard L. White, Jr., Sen. David Rogers, Sen. Frank J. Biddinger, Rep. William J. Brighton, Rep. Ben Lesniak, Jr., and Sen. Emil Schmutzler, Jr. 1967-1968 JUDICIAL STUDY COMM'N BIENNIAL REP., 1970 JUDICIAL STUDY COMM'N REP.

Of particular significance is the fact that the Indiana Judicial Study Commission's commentary to its proposed Section 4 is identical in language to comments published by the ABA in 1962 in support of its model provision. The ABA explained: "The proposal that the appellate power in criminal cases include the power to review sentences is based on the efficacious use to which that power has been put by the Court of Criminal Appeals in England." Text of the ABA Article, *supra*, at 9. This ABA language was utilized in its entirety by the Commission in its report, and it represents the only commentary the Commission employed to support the grant of review-and-revise power. *See* 1968 JUDICIAL STUDY COMM'N BIENNIAL REP. 10.

As of the time the ABA approved and issued its Model Judicial Article, the British statute establishing the Court of Criminal Appeal provided:

> On appeal against sentence the Court of Criminal Appeal shall, if they think that a different sentence should have been passed, quash the sentence passed at the trial, and pass such other sentence warranted in law by the verdict (*whether more or less severe*) in substitution therefor as they think ought to have been passed, and in any other case shall dismiss the appeal.[2]

Criminal Appeal Act, 1907, 7 Edw. 7, c. 23, § 4(3) (emphasis added).[3]

---

[2] The apparent role of the English system upon the Commission has previously been noted. Childess v. State, 848 N.E.2d 1073, 1079 (Ind. 2006); Williams v. State, 827 N.E.2d 1127, 1128 (Ind. 2005); Serino v. State, 798 N.E.2d 852, 856 (Ind. 2003); Hurt v. State, 657 N.E.2d 112, 114 n.2 (Ind. 1995); Cooper v. State, 540 N.E.2d 1216, 1218 (Ind. 1989); Hardebeck v. State, 656 N.E.2d 486, 489-90 (Ind. Ct. App. 1995), *trans. denied*. Not explored, however, is the fact that the Commission and the legislature appear to have relied solely on the ABA's 1962 understanding and description of the English system of criminal sentence review as it then existed.

[3] Subsequent to the 1962 publication of the ABA Model Judicial Article's publication, the ABA undertook a more extensive survey of the English Appellate Court procedure. *See* ABA Advisory Comm. on Sentencing and Review, *Standards Relating to Appellate Review of Sentences: Approved Draft* (1968), App'x C. The field study in England launched in September 1965. *Id.* at 96.

When the ABA performed its 1964-65 study of English appellate review of sentences, it was within the Court of Criminal Appeal's power to impose a greater sentence than the lower court. But the ABA's 1968 report observed that the appellate courts had essentially halted the exercise of such authority. It was predicted when the Advisory Committee drafted its standards that the English Parliament would abolish the power of the appellate courts to increase sentences, a change with which the Advisory Committee agreed and on which it based its recommendation that such power be excluded from the reviewing courts' arsenals. In 1968, Parliament enacted a provision limiting appellate sentence review, providing that an appellant may not be "more severely dealt with on appeal than he was dealt with by the court below." Criminal Appeal Act, 1968, c.19, § 11(3). Since then, however, Parliament has expressly authorized the Court of Appeal, if a criminal sentence "has been unduly lenient," to "pass such sentence as they think appropriate." Criminal Justice Act, 1988, c. 33, § 36(1).

In 1967, the Indiana General Assembly began the constitutional amendment process, passing House Joint Resolution 6.[4] As to appellate review and revise authority, the legislature precisely followed the recommendation of the Judicial Study Commission. *Compare* Act of March 6, 1967, ch. 375, 1967 Ind. Acts 1360-61 *with* 1966 JUDICIAL STUDY COMM'N REP. 5-6. In its 1968 Biennial Report, continuing the process of constitutional amendment, the Judicial Study Commission again suggested the same language in regard to review and revise in both the proposed amendment and its commentary. 1967-1968 JUDICIAL STUDY COMM'N BIENNIAL REP. 9-10. In 1969, the Indiana General Assembly passed House Joint Resolution 12, employing identical language as to granting appellate review and revise authority. Act of March 10, 1969, ch. 457, 1969 Ind. Acts 1847-48. This resolution expressly authorized that the report of the Judicial Study Commission be consulted for purposes of judicial construction and application of the amendment. *Id.* at 1853. The amendment to the Indiana Constitution was ratified by the voters on November 3, 1970, and became effective January 1, 1972.

Under the plain language of the Indiana Constitution, the Court is granted the ability to revise a sentence. The word "revise" is not synonymous with "decrease," but rather refers to any change or alteration. With no specific prohibition against increasing a sentence on appeal appearing in the text of Section 4, and the history of the provision indicating that the framers

There is no evidence, however, that the Judicial Study Commission or the Committee that drafted the new Article 7 consulted, considered, or even knew of the 1968 ABA *Standards*. The Committee clearly relied upon the 1962 Model Judicial Article, quoting verbatim from that article in its 1966 Report of the Judicial Study Commission. The developments in England were reported by the ABA in a tentative draft released in April 1967, and then in a final draft in 1968 the ABA recommended against allowing for an appellate court to increase a sentence on appeal. But this report was released after the first resolution to amend the Indiana Constitution had been approved by the General Assembly, and the Judicial Study Commission made no alterations to the original proposed language, taken from the 1962 ABA Model State Judicial Article. There is no evidence that the framers contemplated that "revising" a sentence would omit the authority to increase a sentence, a power of the English Court of Appeal, as envisioned by the 1962 ABA Judicial Model Article upon which the Commission relied.

[4] To amend the Indiana Constitution, an amendment must be proposed in either house of the General Assembly, and, if agreed upon by a majority of each house, then the proposed amendment is referred to the General Assembly chosen at the next general election. Ind. Const. art. 16, § 1(a). If the proposed amendment is likewise approved by a majority of the next elected General Assembly, the amendment is submitted to the voters in the next general election. *Id.* § 1(b). If then approved by a majority of those voting on the amendment, it is ratified and becomes part of the Constitution. *Id.* § 1(c).

chose to adopt the language of the 1962 ABA Model Judicial Article, which intended to emulate the British system, which at that time authorized the increase or decrease of criminal sentences on appeal, we hold that the appellate review and revise authority derived from Article 4 of the Indiana Constitution likewise includes the power to either reduce or increase a criminal sentence on appeal.[5]

**2. The State's Challenge of the Defendant's Sentence on Cross-Appeal**

The defendant did not request that the Court of Appeals review or revise his sentence. The State, however, on cross-appeal seeks a remand for resentencing due to the alleged inadequacy of the trial court's sentencing statement and the insufficient length of its sentence or, in the alternative, requests that the defendant's sentence be revised on appeal and a longer sentence imposed.

The State's authority to appeal a trial court's sentencing determination is restricted by Indiana Appellate Rule 7(A), which provides:

> A defendant in a Criminal Appeal may appeal the defendant's sentence. The State may not initiate an appeal of a sentence, but may cross-appeal *where provided by law*.

App. R. 7(A) (emphasis added). The State identifies no provision of law that authorizes it to challenge a sentence by cross-appeal under Appellate Rule 7(A).

The State's cross-appeal asserts that the trial court abused its sentencing discretion and

---

[5] As noted by the Court of Appeals below, McCullough, 888 N.E.2d at 1281 n.7, several other jurisdictions allow for an appellate court to increase a defendant's sentence on appeal. *See*, *e.g.*, Alaska Stat. § 12.55.120(b) (2005) ("A sentence of imprisonment lawfully imposed by the superior court may be appealed to the court of appeals by the state on the ground that the sentence is too lenient; however, when a sentence is appealed by the state and the defendant has not appealed the sentence, the court is not authorized to increase the sentence but may express its approval or disapproval of the sentence and its reasons in a written opinion."); Neb. Rev. Stat. § 29-2320 (2003) ("Whenever a defendant is found guilty of a felony following a trial or the entry of a plea of guilty or tendering a plea of nolo contendere, the prosecuting attorney charged with the prosecution of such defendant may appeal the sentence imposed if such attorney reasonably believes, based on all of the facts and circumstances of the particular case, that the sentence is excessively lenient."); R.I. Gen. Laws § 12-19.3-4 (1992) ("Within twenty (20) days of the imposition of a sentence which is outside the presumptive sentencing range for the offense, the attorney general, if the court imposes a less severe sentence, or the defendant, if the court imposes a more severe sentence, may appeal the sentence to the supreme court in accordance with procedures to be established by the supreme court.").

also seeks appellate revision on grounds that the sentencing is inappropriately lenient in light of the nature of the offense and the character of the offender. Although the State does not claim that the sentence is invalid as contrary to the trial court's statutory sentencing authority, we observe that where a trial court fails to sentence a defendant in accordance with statutory requirements, the State may raise such a claim for the first time on appeal. Stephens v. State, 818 N.E.2d 936, 939-40 (Ind. 2004).

We conclude that the State may not by appeal or cross-appeal (a) initiate a challenge to a trial court's criminal sentence that is within the court's sentencing authority or (b) seek appellate review and revision of such sentence. When a defendant requests appellate review and revision of a criminal sentence pursuant to authority derived from Article 7, Sections 4 or 6 of the Indiana Constitution, however, the reviewing court is presented with the issue of whether to affirm, reduce, or increase the sentence. As to this issue, the perspectives of both the defendant and the State will be helpful. Thus, the State's appellee's brief, when responding to such a request for sentence review and revision from a defendant, may, if desired, present reasons supporting an increase in the sentence without the necessity of proceeding by cross-appeal. In the present case, however, the defendant does not seek appellate review and revision of his sentence, and thus the State is precluded from seeking an increase in this sentence.

## 3. Resolution

The judgment of the trial court is affirmed in part and vacated in part, as directed by the Court of Appeals. McCullough, 888 N.E.2d at 1282.

Shepard, C.J., and Sullivan, J., concur. Boehm, J., concurs and concurs in result with separate opinion, in which Rucker, J., concurs in Part II.

8

**Boehm, Justice, concurring and concurring in result.**

I concur in Part I of the majority opinion and agree with the portion of Part II holding that the State is not authorized to challenge a sentence by cross-appeal. I also agree with the result reached by the majority, namely that McCullough's sentence remains as entered by the trial court. I reach that result through a somewhat different path.

## I.        The Genealogy of Indiana's Judicial Article

Justice Dickson's opinion for the majority uncovers a rich and interesting history of the events leading up to the 1970 adoption of a revised Article 7 of the Indiana Constitution that overhauled the Indiana judiciary and introduced a number of concepts new to our jurisprudence.

As one who graduated from law school in 1963 and was a practicing lawyer in Indiana throughout the period leading up to the voter's adoption of this amendment, I cannot altogether separate my own impressions of this period from the paper trail that Justice Dickson outlines. I ultimately reach the conclusion that he does: the language of Article 7, Section 4 authorizes appellate courts to revise a sentence either upward or downward. I do not believe, however, that this leads to the conclusion that this Court should consider itself equally ready to revise in either direction, or that the defendant's decision to appeal the sentence is relevant to whether this Court may revise it upward.

I believe the history of the 1970 amendment demonstrates that appellate review was to be encouraged, but also indicates a strong disposition against upward revision of sentences. First, I do not think these issues were carefully considered by either the study committee, the legislature, or the voters. The public discussion of the revisions to Article 7 focused on the selection process for the appellate bench, which changed Indiana from a state that chose its appellate judges by contested partisan election every six years to the merit selection plan we now have. The authors and proponents of this were civil lawyers. I knew the three members of the study commission that recommended adoption of the American Bar Association proposal to authorize appellate review of sentences. C. Ben Dutton, William M. Evans, and Robert V. Bridwell were all well-known Indianapolis attorneys engaged, so far as I recall, either exclusively or overwhelmingly in civil practice. A search of the attorneys field in reported cases confirms this. All three, like me,

1

were educated at a time when the conventional wisdom in the United States was that sentencing was a trial court function, best left to the judge who is most familiar with the defendant and the circumstances of the case. All three, like me, had little practical experience with the criminal justice system. From this I conclude that the study committee's recommendation was little more than a blind acceptance of the provisions adopted in the ABA's Model Judicial Article.

We are, however, explicitly instructed to consider the Commission's report in construing this constitutional provision. In the Joint Resolution agreeing to the proposed amendment, the General Assembly advised that "[t]he report of the Judicial Study Commission and the comments to the article contained therein may be consulted by the Court of Justice to determine the underlying reasons, purposes and policies of this article and may be used as a guide in its construction and application." H.J.R. 12, 96th Gen. Assem., Reg. Sess., Ind. Acts, Ch. 457, at 1853 (Mar. 10, 1969). The Indiana Judicial Study Commission's endorsement of the ABA Model Judicial Article is therefore relevant.

And what should we make of the ABA recommendation? It was not that appellate courts should review and revise sentences. Rather it was that sentences should be subject to appellate review "under such terms and conditions as the [state] Supreme Court shall specify by rules." In other words, this proposal contemplated a fleshing out of the procedures and conditions that would govern an appellate court's review and revision of sentences. It explicitly asked the voters adopting this provision as a constitutional amendment to give the state Supreme Court the authority to prescribe whether and how this appellate function should be carried out. As the majority points out, the ABA commentary, adopted by our study commission, explained that "[t]he proposal that the appellate power in criminal cases include the power to review sentences is based on the efficacious use to which that power has been put by the Court of Criminal Appeals in England." Slip op. at 4.

## II. Revision of Sentences

I agree with the majority that the British background at the time is therefore significant but I draw a different conclusion from that background. Although a 1907 English statute explicitly authorized an upward or downward revision, as the majority notes, by the time Indiana considered this issue in the 1960s, the British courts had virtually abandoned upward revisions.

2

It seems reasonable to infer that the working assumption of the proponents of the ABA Model was that American judges would come to the same conclusion, and would undertake appellate review of sentencing but largely, if not completely, abandon upward revisions.

As we have noted before, a principal concern leading to the recommendation favoring appellate review of sentences was the perception that sentences were not evenly imposed across the state. Rather than adopt a mechanical approach along the lines of the Federal Sentencing Guidelines, it was thought that appellate review could address the major inequities. The initial response of the Indiana Supreme Court was to adopt a rule that prescribed no procedures, but adopted a substantive standard of review that virtually precluded appellate revision. In 1972 the predecessor of Appellate Rule 7 was adopted calling for affirming a sentence unless it was "manifestly unreasonable," thus requiring an appellate declaration that the trial court had lost its bearings altogether before the appellate court would act. As might be expected, few sentences were disturbed under this regime. But increased concern for disparity in sentencing led to the amendment of the rule in 2000 to provide for revision of a sentence that was "inappropriate in light of the nature of the offense and the character of the offender." Under that provision the appellate courts of Indiana have engaged in more frequent revision of sentences, but to date have never increased a sentence. I acknowledge, as the Court of Appeals noted in this case, that this Court has increased sentences on individual counts in the process of reducing the sentence in aggregate. Monroe v. State, 886 N.E.2d 578 (Ind. 2008) (revising five consecutive twenty-year sentences to five concurrent fifty-year sentences). But we have held that "[u]ltimately the length of the aggregate sentence and how it is to be served are the issues that matter," Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008), and neither this Court nor the Court of Appeals has increased an aggregate sentence. In my view that is the proper result and the result anticipated by those who proposed leaving this issue to resolution by Supreme Court rules.

It would seem that the Constitution contemplates rules fleshing out the appellate review of sentences, but Indiana and most other jurisdictions have addressed the issue, if at all, in case law. I have no objection to proceeding by case law, but I do not join in the holding that appellate upward revision is dependent on the defendant's challenging his sentence. As we confirm today, the State can neither appeal nor cross-appeal a sentence. The majority would permit the State to argue for an increased sentence if the defendant challenges the sentence. I assume this means

that no argument for an increased sentence is to be presented in the State's appellate briefing unless the defendant has sought to invoke the appellate court's review and revise power.

This scheme seems impractical to me. First, I assume the appellate court could exercise its review and revise power whether or not the State requested it. It would not take Louis Brandeis to figure out how to smuggle an argument for an increased sentence into a brief ostensibly addressing other issues. More importantly, even if the appellate court would not address the sentence unless one or more parties requests it, upward sentence revision would be at risk only if the defendant initiates the debate over the sentence. This puts the defendant's counsel in a very awkward position if upward revision by an appellate court is a realistic prospect. Often the sentence is the only viable issue in the appeal that Article 7, Section 6 of the Indiana Constitution guarantees. We should not force counsel to choose among raising the issue and obtaining an increased sentence, or foregoing the issue and either waiving appeal or raising frivolous issues.

It seems highly unlikely that in practice Indiana's appellate courts will frequently exercise their power to increase a sentence. Although I agree we have had that power for thirty-six years, neither this Court nor the Court of Appeals has ever exercised it. We have tacitly, and without awareness of the British legacy Justice Dickson has outlined, followed our British cousins in foregoing upward revision of sentences. In my view we should forthrightly state that although we have that power, we have never exercised it and do not expect to exercise it in the future except in the most unusual case. This will leave defendants free to exercise their constitutional right to appeal without great concern for retribution, eliminate concern for ineffective assistance claims based on taking an appeal that backfired, and avoid the temptation for the State to disguise a sentencing argument in some other garb.

Rucker, J., concurs in Part II.