**Paula R. COOPER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45S00–8701–CR–61.

Supreme Court of Indiana.

July 13, 1989.

William L. Touchette, Lake County Appellate Public Defender, Crown Point, Victor L. Streib, Cleveland–Marshall College of Law, Cleveland, Ohio, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

John R. Van Winkle, John G. Shubat, Bingham Summers Welsh & Spilman, Indianapolis, for amicus curiae, Indiana Juvenile Justice Task Force.

Richard A. Waples, Legal Director, Indiana Civil Liberties Union, Indianapolis, Lawrence A. Vanore, Barnes & Thornburg, Indianapolis, for amicus curiae, Indiana Civil Liberties Union.

Nigel Rodley, Amnesty Intern., United Kingdom, Paul L. Hoffman, Joan W. Howarth, Amnesty International–USA, Legal Support Network, Los Angeles, Cal., Michael Sutherlin, Indianapolis, Joan Fitzpatrick, Alice M. Miller, Jane G. Rocamora, David Weissbrodt, Amnesty International–USA, Legal Support Network, New York City, for amicus curiae, Amnesty Intern.

Joseph A. Morris, The Mid–America Legal Foundation, Chicago, Ill., Dennis J. Stanton, Merrillville, for amicus curiae, The Mid–America Legal Foundation, Leadership Councils of America, and the Lincoln Institute for Research and Education.

SHEPARD, Chief Justice.

The question is whether Paula Cooper may be executed for committing the grisly murder of Mrs. Ruth Pelke. We hold that she may not.

There are two separate and independent grounds for this decision. First, in light of the Indiana General Assembly's policy decision that persons who commit crimes at age 15 or younger may not be executed, we conclude under article 7, section 4 of the Indiana Constitution that Cooper should not be executed.

Second, the legal issue presented by Cooper is within the boundaries of *Thompson v. Oklahoma*, 487 U.S. ——, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), which held that the eighth amendment of the United States Constitution prohibits execution of an offender under the same circumstances.

This is a difficult conclusion to reach because of the gruesome nature of Cooper's acts.

### I. *Case History*

On May 14, 1985, Paula Cooper, age 15, gathered with several of her girlfriends. The conversation turned to a plan to obtain money. They devised a scheme they thought would induce a neighborhood woman to give them money, but it met with no success.

Cooper's accomplice April Beverly suggested they could get into 78–year–old Ruth Pelke's house "to get money and jewelry and different things" by asking her when she held Bible classes. They went to the house and spoke to Mrs. Pelke, but did not get inside. Beverly gave Cooper a knife "to scare the old lady with" and they tried again. This time they gained entrance by asking Mrs. Pelke to write down the information about her Bible classes.

While Mrs. Pelke was writing down the information, Paula Cooper grabbed her from behind and pushed her to the floor. Cooper hit her on the head with a vase. She took the knife, cut Pelke's arms and legs, and stabbed her in the stomach and in the chest. The autopsy revealed Pelke was stabbed thirty-three times.

After the murder, Cooper helped the other girls search the house. They found the keys to Pelke's car, which Cooper used to get away. Cooper also took ten dollars from the house.

On July 8, 1985, the prosecutor filed an amended information charging Cooper with three counts of murder under Ind.Code § 35–42–1–1. On April 21, 1986, Cooper pled guilty to count I, knowing or intentional murder, and count II, murder in the commission or attempt of a robbery. There was no plea agreement. During the hearing at which Cooper pled, she described her attack on Pelke in some detail. She admitted that she had entered the house intending to commit robbery and that she had in fact taken ten dollars. The trial court found that Cooper's statements provided the factual basis to prove she had committed the crimes and entered a judgment of conviction on both counts.

The trial court held a sentencing hearing on July 11, 1986. After expressing doubt about applying Indiana's death penalty statute to a juvenile, the late Judge James Kimbrough considered various mitigating and aggravating circumstances and sentenced Cooper to death.

On direct appeal Cooper's attorneys argue that sentencing Cooper to death violates the Indiana Constitution and the United States Constitution because she was 15 years old when she committed the crime. These issues and Cooper's appeal have been the subject of international attention.[1]

---

1. Suro, *Pope Urges Indiana Not to Execute Woman,* New York Times, Sept. 27, 1987, at 13, col. 1. *A Teen–Ager on Death Row,* Washington Post, Sept. 30, 1987, at A18 ("An American teenager has become a well-known figure and the center of controversy in Europe."). *Death Penalty Protest,* Washington Post, March 4, 1989, at A17 (Italian delegation presents petition with one million signatures to United Nations protesting the death penalty and asking clemency

The appeal pending in this Court, however, must be resolved only on the basis of Indiana and federal law. While Cooper's lawyers raise at least six grounds for vacating her penalty, we find two to be dispositive.

## II. *The Indiana Constitution*

■ The Indiana Code requires automatic review by this Court of every death sentence. Ind.Code § 35–50–2–9(h) (Burns 1985 Repl.) This review must occur whether a prisoner seeks it or not; it cannot be waived. *Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95. The Indiana Constitution requires that this review be by way of direct appeal to this Court and confers upon the Court "the power to review all questions of law and to review and revise the sentence imposed." Ind. Const. art. VII, § 4.

The framers of the constitutional reform of which section 4 was a part provided explicitly for reference to certain historical materials in interpreting its meaning: "The report of the Judicial Study Commission and the comments to the article contained therein may be consulted by the Court of Justice to determine the underlying reasons, purposes, and policies of this article and may be used as a guide in its construction and application." Ind. Const. art. VII, Schedule (Burns 1978 Ed.). The Commission's report describes the origin and scope of the power to review and revise sentences contained in section 4: "The proposal that the appellate power in criminal cases include the power to review sentences is based on the efficacious use to which that power has been put by the Court of Criminal Appeals in England." Report of the Judicial Study Commission 140 (1967). The English statute establishing the Court of Criminal Appeals set forth that court's power to review and revise sentences as follows:

> On appeal against sentence the Court of Criminal Appeal shall, if they think that a different sentence should have been passed, quash the sentence passed at the

trial, and pass such other sentence warranted in law by the verdict (whether more or less severe) in substitution therefor as they think ought to have been passed, and in any other case shall dismiss the appeal.

Criminal Appeal Act, 1907, 7 Edward 7, ch. 23, § 4(3).

In light of these directives, this Court has regarded the duties placed upon it by the Code and the Constitution as requiring a more intensive level of scrutiny for sentences of death than for other criminal penalties. Criminal sentences generally are reviewed under the Rules for Appellate Review of Sentences, Ind. Rules of Procedure. Rule 2 of that series provides that a trial court's sentence will be affirmed unless it is manifestly unreasonable. In capital cases, however, these rules "stand more as guideposts for our appellate review than as immovable pillars supporting a sentence decision." *Spranger v. State* (1986), Ind., 498 N.E.2d 931, 947 n. 2, *cert. denied*, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536 (1987).

■ In contrast to appellate review of prison terms and its accompanying strong presumption that the trial court's sentence is appropriate, this Court's review of capital cases under article 7 is part and parcel of the sentencing process. Rather than relying on the judgment of the trial court, this Court conducts its own review of the mitigating and aggravating circumstances "to examine whether the sentence of death is appropriate." *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, 1058, *cert. denied*, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983). The object of this review is to assure consistency in the evenhanded operation of the death penalty statute, and our decision is made "in light of other death penalty cases." *Judy*, 275 Ind. at 169, 416 N.E.2d at 108. The thoroughness and relative independence of this Court's review is a part of what makes Indiana's capital punishment statute constitutional. *Id.*

for Cooper.). Tackett, *Indiana Law May Bar Teen's Execution,* Chicago Tribune, March 2, 1989, at 1 (friars travel from Italy for oral argument). *See also* Hackett, *Indiana Killer,*

*Italian Martyr,* Newsweek, Sept. 21, 1987, at 37; Sitomer, *Abolish the Death Penalty for Juvenile Offenders,* The Christian Science Monitor, Oct. 8, 1987, at 19.

■ While this case has been pending on appeal, the legal landscape surrounding it has changed dramatically in ways that reflect on the appropriateness of this death penalty "in light of other death penalty cases." The Indiana General Assembly responded to the sentence imposed on Cooper by enacting Public Law No. 332–1987, approved April 7, 1987, and entitled "An Act to amend the Indiana Code concerning children accused of murder." 1987 Ind. Acts 332. Prior to this act, Ind.Code 35–50–2–3(b) read: "... a person who commits murder may be sentenced to death under section 9 of this chapter." Section 1 of the 1987 act amended Ind.Code 35–50–2–3(b) to read: "... a person who was at least sixteen (16) years of age at the time the murder was committed may be sentenced to death under section 9 of this chapter."

The 1987 act, section 2, also amended Ind.Code § 35–50–2–9(c) by adding to the statutory list of mitigating circumstance the fact that "The defendant was less than eighteen (18) years of age at the time the murder was committed." Section 3 of the 1987 act proclaimed: "This act does not apply to a case in which a death sentence has been imposed before September 1, 1987."

Although Public Law No. 332–1987 was popularly called "the Paula Cooper bill," the Attorney General correctly points out that its effective date meant that it did not apply to Cooper herself. The bill's sponsors declared openly that this exclusion

was purposeful.[2] Although the exclusion was assaulted on the House floor during consideration of the bill as being unjust,[3] it was apparent that the authors wished to enact a general policy without the passion that legislating on a particular case would arouse.[4] Later legislative efforts to extend the act to Cooper were defeated when opponents asserted that legislating about a case pending on appeal would be improper.[5] The state's chief executive also decided not to intervene in Cooper's case while it was on appeal.[6]

Cooper's attorneys argue that if Cooper is executed she would be the only person ever to receive that penalty for a crime committed at age 15. Of the 133 offenders who have been executed in Indiana, three were juveniles at the time they were sentenced to death. All three were age 17 at the time of their crime. The most recent of the three was William Ray, executed August 5, 1920. Brief for Appellant at 51.[7] Since 1920 three other juveniles, Jay Thompson, Keith Patton, and Paula Cooper, have been sentenced to death for crimes committed prior to the age of majority. The death sentences of Jay Thompson and Keith Patton have been reversed, however, leaving Paula Cooper the only juvenile on death row in Indiana. Brief for Appellant at 52.

Now that Indiana law establishes 16 as the minimum age for the imposition of the death penalty, Paula Cooper would be both the first and the last person ever to be

2. Wheat, *Death Bill Clears House,* The Times of Hammond, Feb. 20, 1987, at A1 ("I'm not trying to save Paula Cooper, just the Paula Coopers of this world," Rep. Earline Rogers).

3. Ashley, *House Votes to Raise Death Penalty Age to 16; Bill Now Goes to Senate,* Gary Post–Tribune, Feb. 20, 1987, at B1 ("Basically that means we are excluding Paula Cooper," [Rep. Joyce] Brinkman said. "I don't want a bill that tells Paula Cooper, 'You are going to be the exception.' That is an injustice.").

4. On this subject, one of the bill's sponsors, Rep. Earline Rogers said: "I made it a point not to include her because I think this should be handled in a non-emotional way." Klose, *Minimum Death Penalty Age Debated,* Washington Post, March 25, 1987, at A3.

5. Rep. Chester Dobis said: "If we do this and this becomes law, we will be eliminating one

branch of government (the judiciary) and I don't think that's our job." Remondini, *House Nixes Bill Designed to Save Paula Cooper's Life,* Indianapolis Star, April 4, 1989, at D4.

6. Governor Robert D. Orr said that "until the judicial system has completed its work and the (state) Supreme Court has taken action in the matter, it would be inappropriate for me to intercede." Huddleston, *Attorney Says Pope Has Urged Orr to Grant Cooper Clemency,* The Times of Hammond, Sept. 27, 1987, at A7.

7. The foundation for this is V. Streib, *Death Penalty for Juveniles* 195 (1987). The author is Professor Victor L. Streib, who is co-counsel for Cooper on appeal. The Attorney General does not dispute these statistics.

executed in Indiana for a crime committed at the age of 15. This makes her sentence unique and disproportionate to any other sentence for the same crime.

In accordance with our duty to review and revise sentences under the Indiana Constitution and in light of the General Assembly's policy decision that no one should be executed for a crime committed at age 15, we reverse that part of the trial court's judgment ordering Cooper's execution.

### III. *United States Constitution*

■ Cooper also argues that executing someone who was 15 years old at the time of the offense violates the eighth amendment of the United States Constitution. Counsel for Cooper argue that her case is controlled by *Thompson v. Oklahoma,* 487 U.S. ——, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). In that case a majority of justices agreed that Thompson's death sentence must be vacated; however, they did not agree upon the reasons.

William Wayne Thompson committed a brutal murder at age 15. He was waived into adult court, tried and found guilty, and sentenced to death. His claim before the Oklahoma courts and the U.S. Supreme Court was that execution for a crime committed at age 15 constituted "cruel and unusual punishment." Writing for a plurality of four justices, Justice John Paul Stevens declared that application of eighth amendment principles must be guided by the "evolving standards of decency that mark the progress of a maturing society." *Thompson,* 487 U.S. ——, ——, 108 S.Ct. 2687, 2691, 101 L.Ed.2d 702, 709 (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630, 642 (1958) (plurality opinion)). Stevens noted that every legislature which had spoken on the subject had decided that 16 should be the minimum age for execution. He asserted that juries rarely impose execution on juveniles under 16, and that executing persons under age 16 could not be expected to make "any measurable contribution to the goals that

capital punishment is intended to achieve." *Id.* at ——, 108 S.Ct. at 2700, 101 L.Ed.2d at 720. Accordingly, he said for four members of the Court, Oklahoma's statute was unconstitutional as against the eighth amendment.

Justice Sandra Day O'Connor cast the fifth vote to set aside Thompson's sentence on eighth amendment grounds. O'Connor reached the same result on what she described as narrower grounds than those used by the plurality. Saying that she believed a national consensus probably does exist that executing persons under 16 is cruel and unusual punishment, she announced herself unready to make that consensus a matter of constitutional law without further evidence. She did declare that prisoners "may not be executed under the authority of a capital punishment statute that specifies no minimum age at which the commission of a capital crime can lead to the offender's execution." *Id.* at ——, 108 S.Ct. at 2711, 101 L.Ed.2d at 734.

This search for a bright line, an age below which the commission of a crime cannot constitutionally lead to execution, has been convincingly criticized as an endeavor that will ultimately lead to disparate treatment of defendants whose offenses and culpability are equal.[8] Nevertheless, to the extent that a plurality decision of the U.S. Supreme Court can be seen as precedent, this Court is obligated to follow that Court's decisions on federal constitutional questions. *See Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 562, 4 L.Ed. 97 (1816).

The Attorney General argues that neither the plurality opinion nor Justice O'Connor's concurrence can be viewed as a constitutional rule requiring its acceptance as precedent. We acknowledge that as a plurality decision the *Thompson* opinion does not carry the precedential weight that a full majority would. Nonetheless, it is clear that four of the United States Supreme Court justices agree that it is cruel and unusual punishment to execute a juve-

---

**8.** J.L. Hoffmann, *On the Perils of Line–Drawing: Juveniles and the Death Penalty,* 40 Hastings L.J. 229 (1989).

nile convicted of a murder committed before the age of 16, and one justice believes it is unconstitutional to execute a juvenile unless the death penalty statute itself identifies a minimum age for the death penalty.

The Supreme Court has instructed upon its own plurality opinions by saying that "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859, 872 n. 15 (1976) (interpreting the effect of the plurality decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)).

The Indiana death penalty statute under which Cooper was sentenced did not itself contain a minimum age. Such a statute, Justice O'Connor said, violates the eighth amendment. We are persuaded that Indiana's statute fits under *Thompson v. Oklahoma* and violates the eighth amendment of the United States Constitution. Because of the similarities between the statutes under which Thompson and Cooper were sentenced, we are bound to follow the result which was supported by the majority in *Thompson*, regardless of the division in the Supreme Court's reasoning in that case.

### IV. *Conclusion*

■ Having concluded that Cooper may not be executed consistent with the Indiana Constitution or the United States Constitution, we come to determine the appropriate mandate which should issue. Our rules favor final disposition of a case on appeal under certain circumstances. Appellate Rule 15(N), Ind. Rules of Procedure, provides in pertinent part:

> The court shall direct final judgment to be entered or shall order the error corrected without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper....

The rule reflects a policy that a reviewing court should direct a final judgment on a pure question of law or a mixed question of law and fact, but should refer cases involving resolution of disputed material facts back to the trial court for a hearing on the evidence. *B & R Farm Services v. Farm Bureau Mutual Insurance* (1985), Ind., 483 N.E.2d 1076. *See also Herrod v. State* (1986), Ind., 491 N.E.2d 538.

Before sentencing Cooper, the trial court conducted a lengthy evidentiary hearing and entered findings concerning both aggravating factors and mitigating factors. The trial judge determined that the aggravators outweighed the mitigators such that the maximum penalty possible under the statute, execution, was justified. These same factors, weighed the same, clearly support the next most severe penalty under the statute, namely, the maximum sentence of imprisonment. In order to bring this lengthy and expensive litigation to an end, we conclude that a final judgment imposing the maximum sentence permitted under the Indiana Code should be directed on appeal.

### *Mandate*

That part of the trial court's judgment which orders execution is vacated. We remand with instructions to enter a sentence of 60 years, the maximum prison sentence for murder under Indiana law. Ind.Code § 35–50–2–3(a) (Burns 1985 Repl.).

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., concurs in result with separate opinion.

PIVARNIK, Justice, concurring in result.

I concur in the result reached by the majority in the disposition of this case. In *Thompson v. Oklahoma* (1988), 487 U.S. ——, 108 S.Ct. 2687, 101 L.Ed.2d 702, five Justices of the United States Supreme Court held that the Eighth Amendment of the United States Constitution prohibits the execution of an offender under circumstances present in the instant case.

Four of the Justices held outright that a death sentence imposed on a person who was under sixteen (16) years of age at the time of the commission of the crime was unconstitutional as against the Eighth Amendment. The fifth Justice, Sandra

Day O'Connor, found that it was unconstitutional to execute one under sixteen (16) years under the authority of a capital punishment statute that specifies no minimum age at which the commission of a capital crime can lead to the offender's execution. At the time this crime was committed, Paula Cooper was fifteen (15) years of age. Our Indiana death penalty statute under which she was sentenced did not provide at the time she committed the crime a minimum age at which the death penalty could be imposed.

Clearly, pursuant to the holding of a majority of the United States Supreme Court, it would be unconstitutional to impose the death penalty on Paula Cooper and we are guided by their holding.

For this reason, I concur in the result reached by the majority.