**Robbie R. BLUCK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 12A02–9812–CR–976.

Court of Appeals of Indiana.

Sept. 22, 1999.

---

**510**

Richard L. Langston, Frankfort, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Robbie R. Bluck appeals from his seventy-six year sentence, the maximum permitted by law, following convictions on three counts of Child Molesting as Class B felonies, and two counts of Child Molesting as Class C felonies.[1] Bluck contends that the court impermissibly punished him for exercising his right to a jury trial, based his sentence on invalid aggravating circumstances and imposed a manifestly unreasonable sentence.

We affirm in part, reverse in part and remand.

---

1. *See* IND.CODE §§ 35–42–4–3(a) and (b).

## FACTS

Bluck lived in an apartment in the same building where thirteen-year-old J.A. lived with his family. J.A. visited Bluck almost every day. On one occasion, when J.A. and Bluck were alone, Bluck pulled down his own pants and told J.A. to do the same. J.A. complied. Bluck fondled J.A.'s penis, and the minor reciprocated. Over a four-month period there were approximately ten to fifteen similar incidents. Bluck also performed fellatio and anal intercourse on J.A., and J.A. performed fellatio on Bluck.

The State charged Bluck with five counts of child molesting. At Bluck's first trial, the jury was unable to reach a verdict, and the court declared a mistrial. Upon re-trial, the jury found Bluck guilty on all counts. In its sentencing statement, the court enumerated four aggravators and one mitigator, found that the aggravators outweighed the mitigator, and imposed the maximum sentence of twenty years for each of the three Class B felonies, the maximum sentence of eight years for each of the Class C felonies, and then ordered the sentences to run consecutively, for a total executed term of seventy-six years. Bluck now appeals.[2]

## DISCUSSION AND DECISION

### A. Jury Trial

■ Bluck first contends that the severity of his sentence demonstrates that the trial court impermissibly punished him for exercising his constitutional right to a jury trial. The right to trial by jury for serious offenses is a fundamental right. *Walker v. State*, 454 N.E.2d 425, 429 (Ind. Ct.App.1983), *trans. denied.* A more severe sentence may not be imposed upon a defendant because he exercises that right. *Hill v. State*, 499 N.E.2d 1103, 1107 (Ind. 1986); *Walker*, 454 N.E.2d at 429.

■ In support of his claim, Bluck asserts generally that his sentence is several times greater than sentences usually imposed on other first time offenders in the Clinton Circuit Court. Even if that were true, Bluck has not shown that the sentence resulted from his having exercised his right to a jury trial. The trial court did not mention the jury trial when it sentenced Bluck and, without any probative evidence, we cannot say that the sentence violated Bluck's constitutional rights on those grounds. *See Hill*, 499 N.E.2d at 1107; *Walker*, 454 N.E.2d at 430.

### B. Sentencing Statement

■ Next, Bluck contends that the court identified improper aggravating circumstances. Generally, sentencing determinations are within the trial court's discretion and are governed by Indiana Code Section 35–38–1–7.1. *Thacker v. State*, 709 N.E.2d 3, 9 (Ind.1999). When enhancing a presumptive sentence, the trial court must identify all "significant" aggravating and mitigating factors, state why each is considered aggravating or mitigating, and articulate the balancing process by which the court determined that the aggravating factors outweighed the mitigating factors. *Coleman v. State*, 694 N.E.2d 269, 279 (Ind.1998). The same aggravating circumstances may be used to enhance a presumptive sentence and to impose consecutive sentences. *Hardebeck v. State*, 656 N.E.2d 486, 491 (Ind.Ct.App.1995), *trans. denied.*

Here, Bluck challenges the following separately identified aggravating circumstances:

#### 1. *Correctional Treatment*

■ The court stated:

The defendant is in need of correctional treatment that can best be served by commitment to a penal facility. *He is*

---

**2.** We remind counsel for Appellant that the "Facts" section of his appellate brief should contain "[a] statement of the facts relevant to the issues presented for review, with appropriate references to the record." Ind. Appel-

late Rule 8.3(A)(5). This differs from the "Statement of the Case" which includes "the course of proceedings relevant to the issues presented for review...." Ind. Appellate Rule 8.3(A)(4).

*not a suitable candidate for rehabilitative treatment because of his denial that the present offenses occurred.* The child molesting expert this Court uses, Ed Pereira, Family Services Society in Marion, Indiana, has testified on many occasions in this Court that rehabilitation is not possible without the defendant admitting the molestation and having empathy for the victim.

(emphasis added). The need for correctional treatment best served by commitment to a penal facility is a proper aggravator only when the trial court articulates why the specific defendant requires treatment for a period of time in excess of the presumptive sentence. *Beason v. State,* 690 N.E.2d 277, 281–82 (Ind.1998). Here, in its formal sentencing statement, the court relied upon testimony from an expert in other cases to conclude that, because Bluck denied the molestations, rehabilitation was not possible. During the sentencing colloquy, the court also remarked, "[I]t's pretty well known within the field that a [sex offender] is not a suitable candidate for treatment [who] denies the offenses."

When determining the proper sentence to be imposed, the rules of evidence, other than those concerning matters of privilege, do not apply. Ind. Evidence Rule 101(c)(2); *Jackson v. State,* 697 N.E.2d 53, 55 (Ind.1998). The rationale for the relaxation of evidentiary rules is that, in a trial, the issue is whether a defendant is guilty of having engaged in certain criminal conduct, and the rules of evidence limit the evidence to that strictly relevant to the crime charged. *Thomas v. State,* 562 N.E.2d 43, 47 (Ind.Ct.App.1990). At sentencing, however, the evidence is not confined to the narrow issue of guilt. *Id.* Rather, the task is to determine the type and extent of punishment. *Id.* "This individualized sentencing process requires possession of the fullest information possible concerning the defendant's life and characteristics." *Id.*

Nevertheless, the defendant is entitled to be sentenced only on the basis of accurate information, and the defendant retains the right to refute any inaccurate or improper information. *Dillon v. State,* 492 N.E.2d 661, 663 (Ind.1986). The sentencing process should be fair to each individual defendant, and a sentence based on materially untrue assumptions violates due process. *Id.* (citations omitted). There is literature indicating that typical sex offenders cannot be rehabilitated until they admit their behavior. *See, e.g.,* Melissa R. Saad, Note, *Civil Commitment and the Sexually Violent Predator: Stability Without Tyranny and Liberty Without Anarchy,* 75 DENV. U.L.REV. 595, 604–05 (1998). However, when sentencing a particular defendant, profile evidence regarding the "average" child molester may or may not be probative. While Bluck's character is at issue, the court must base its sentencing decision on factors attributable specifically to him rather than on his identification with a general class or category of offenders. *See Beason,* 690 N.E.2d at 281–82. The record contains no relevant evaluation or diagnosis, and Bluck had no fair opportunity to refute the information on which the court relied, material that, in any event, was neither specific to him nor included in the pre-sentence report nor received into evidence.

We recognize that successful psychological therapy may well depend upon the sex offender's admission of his guilt. Nevertheless, in a court of law, the defendant has the right to protest his innocence at all stages of the criminal proceeding, including sentencing. *Dockery v. State,* 504 N.E.2d 291, 297 (Ind.Ct.App. 1987). It is not an aggravating factor for a defendant, in good faith, to consistently maintain his innocence, and a court may not enhance a sentence for that reason. *Angleton v. State,* 686 N.E.2d 803, 816 (Ind.1997). In its brief, the State concedes, in effect, that the court's reliance on Bluck's failure to admit his guilt cannot

support the sentence enhancement.[3] We agree and conclude that the court was not justified in finding that Bluck required treatment for a period of time in excess of the presumptive sentence because he denied having committed the molestations.

### 2. *Lack of Remorse*

 The State, however, claims that the reason the court found Bluck needed treatment beyond the presumptive period was because he showed no remorse. In a separately identified but related aggravator, the court stated:

> Defendant has shown no remorse for these offenses. The lack of remorse can be used as an aggravating circumstance because of the corroboration of the victim and polygraph expert, Ernie Hudson.

A defendant lacks remorse when he displays disdain or recalcitrance, the equivalent of "I don't care." *Smith v. State*, 655 N.E.2d 532, 539 (Ind.Ct.App.1995), *trans. denied.* This has been distinguished from the right to maintain one's innocence, i.e., "I didn't do it." *Id.* Our supreme court has stated that a lack of remorse by a defendant who insists upon his innocence may be regarded as an aggravator. *Bacher v. State*, 686 N.E.2d 791, 801 (Ind.1997). An exception has been found where a defendant maintained his innocence and the only evidence of guilt was the victim's uncorroborated testimony. *See Dockery*, 504 N.E.2d at 297.

 Bluck does not challenge the factual predicate for the court's finding but relies upon *Dockery* and argues that there was no physical evidence to corroborate J.A.'s testimony. The State counters that Bluck failed a polygraph test, the results of which were admitted at his trial. This,

the State argues, constitutes sufficient independent evidence to warrant the court's use of the lack of remorse aggravator. We agree that there is evidence corroborating the victim's testimony so that *Dockery* does not control. Under *Bacher*, the court was justified in enhancing Bluck's sentence based upon his lack of remorse.

### 3. *Elements of the Offenses*

 Bluck argues that the court impermissibly used the elements of the offenses to enhance his sentence. He challenges the following statement:

> Although this is defendant's first known conviction, his actions in these offenses were repetitive and ongoing in nature. The 13 year old victim was violated in every way possible sexually. Further, defendant has two counts of Sexual Misconduct with a Minor and one count of Child Solicitation on three different victims from the victim in this case,[4] which are pending trial.

We agree that the victim's age and the criminal acts are material elements of child molesting and, thus, not available to enhance a sentence. *See Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996). But here the court also described the repetitive and ongoing nature and circumstances of the crimes, including the uncharged acts against J.A., which may be considered an aggravator. IND.CODE § 35–38–1–7.1(a)(2); *Mitchem v. State*, 685 N.E.2d 671, 680 (Ind.1997).

 The court also noted Bluck's arrests on similar charges with respect to other alleged victims. A defendant's record of arrests may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he will

---

**3.** The State asserts Bluck's lack of remorse, a separately identified aggravator, as the reason that Bluck was in need of correctional treatment beyond the presumptive sentence. *See infra.*

**4.** The State charged Bluck under the same cause number with sexual misconduct with a

minor and child solicitation. Those charges concerned two other victims and were severed for purposes of trial. In addition, Bluck was apparently charged under a separate cause number with sexual misconduct involving a fourth victim.

**514**

commit another crime. *Taylor v. State,* 695 N.E.2d 117, 121 (Ind.1998). As this court has recognized, criminal charges pending at the time of sentencing may also be used to enhance a sentence. *Fourthman v. State,* 658 N.E.2d 88, 92 (Ind.Ct. App.1995), *trans. denied.* Because the challenged statement identifies two valid aggravators, we find no error on this issue.

### 4. Position of Trust

Bluck also maintains the court erred when it found the following aggravator:

Defendant gained the trust of the victim by first inviting him into his home, and then once the molestation started, he threatened to kill the victim and his family.

J.A. testified that Bluck threatened to "get" J.A., his mother and his sisters if he told anyone about the incidents. Bluck did not explain what "get them" meant. The victim inferred that Bluck would "try to kill [him] or something. [He] wasn't for sure." Bluck also threatened to take J.A. to Mexico and sell him. These threats further describe the nature and circumstances of the crime.

The State construes the court's finding as a statement that Bluck was in a "position of trust" with J.A. We cannot agree. The court did not use that phrase, and Bluck was merely J.A.'s neighbor. Being a neighbor, without more, is not a position of trust warranting its consideration as an aggravating circumstance. *See Edgecomb v. State,* 673 N.E.2d 1185, 1198 (Ind.1996); *cf. Smith v. State,* 678 N.E.2d 1152 (Ind.Ct.App.1997) (teacher, coach sponsor and mentor), *trans. denied; Singer v. State,* 674 N.E.2d 11 (Ind.Ct.App. 1996) (sole custodial parent); *Shaffer v. State,* 674 N.E.2d 1 (Ind.Ct.App.1996) (babysitter), *trans. denied.* The court's finding merely describes the nature and circumstances of the crime. As such, it was not a separate aggravator but was one and the same aggravator as that previously discussed. *See supra* section (B)(3).

In addition, the trial court identified but gave no weight to a significant mitigator, Bluck's lack of a criminal history. The dissent notes that, according to writers in the field, many molesters have committed multiple offenses before ever being charged and that the circumstances in this case support the inference that Bluck's lack of a criminal history reflects no more than that he was not previously caught. Thus, the dissent reasons that the trial court was justified in discounting this factor "to near zero."

As a general rule, the trial court is not required to find the presence of mitigating factors, *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind.1993), and is under no obligation to assign a particular weight to a mitigator it has found. *Culpepper v. State,* 662 N.E.2d 670, 678 (Ind.Ct.App. 1996), *trans. denied.* Bluck now has a criminal record which the court shall consider in determining what sentence to impose, *see* IND.CODE § 35–38–1–7.1(a)(3)(A), and which the court may consider as an aggravating circumstance, *see* IND.CODE § 35–38–1–7.1(b)(2), should he be convicted and sentenced again on other charges. This case, however, is Bluck's first conviction. In a criminal justice system founded on the principles of reformation, *see* IND. CONST. art. I, § 18, where reasonably possible, sentencing orders should distinguish between first offenders and repeat offenders. *See Fointno v. State,* 487 N.E.2d 140, 144 (Ind.1986) (Indiana Bill of Rights reveals concern that, notwithstanding society's valid concerns with protecting itself and providing retribution for serious crimes, the criminal justice system must afford an opportunity for rehabilitation where reasonably possible). Our supreme court has said that no prior criminal record is a factor which deserves "substantial mitigating weight," *Loveless v. State,* 642 N.E.2d 974, 976 (Ind.1994), but by imposing the maximum sentence permitted by law, the court in this case gave the mitigator no weight at all.

In sum, the court identified two invalid aggravating circumstances (need for correctional treatment based upon the refusal to admit guilt and position of trust), several valid aggravating circumstances (lack of remorse, circumstances of the crimes and character of defendant) and one mitigating circumstance. A single valid aggravator is sufficient to support an enhanced sentence. *Kingery v. State*, 659 N.E.2d 490, 496 (Ind.1995). Nevertheless, we are not persuaded that the original sentence would have been the same had the trial court not relied on impermissible factors and had the court given some weight to Bluck's lack of a criminal history. Under these circumstances, we remand to the trial court so that the valid aggravators may be reweighed against the mitigating factor. *See Day v. State*, 560 N.E.2d 641, 643 (Ind.1990); *see also Miller v. State*, 709 N.E.2d 48, 50 (Ind.Ct.App. 1999) (remand for re-sentencing when reviewing court could not determine weight trial court assigned to invalid aggravators).

## C. Manifestly Unreasonable Sentence

Finally, Bluck insists that his sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. He argues that he has no prior criminal record, was convicted of offenses that caused no physical harm and has a "spotless" military record with a security clearance. He asserts that his maximum sentence violates the principle that the primary consideration of the trial court during sentencing is rehabilitation. *See Hardebeck*, 656 N.E.2d at 490 (citing IND. CONST. art. I, § 18).

In considering the nature of the offense and the character of the offender, we know that crimes against children are contemptible, *Singer*, 674 N.E.2d at 15, and that child molesters are often predators. Bluck's conduct here is reprehensible, and his sentence was authorized by statute. While actual physical injury to the victim can support a sentence enhancement, *see, e.g., Smith v. State*, 485 N.E.2d 898, 901 (Ind.1985), it does not follow that the absence of physical injury means the court should not impose an enhanced sentence. *Buchanan v. State*, 699 N.E.2d 655, 657 (Ind.1998). And an honorable military service record does not excuse a sex crime.

We share many of the concerns expressed by the dissent about the proper role of an appellate court in determining the appropriate sentence for a convicted offender. The full panel in this case has struggled with the issue. "[T]he appellate process is uniquely suited to dispassionate consideration of the subject free of the everyday pressures of a trial courtroom." *Cunningham v. State*, 469 N.E.2d 1, 8 (Ind.Ct.App.1984), *trans. denied.* But sentencing decisions often defy quantification. *Carter v. State*, 711 N.E.2d 835, 841 (Ind. 1999). Sentencing is fact-sensitive, and our standard of review remains highly deferential. These factors make principled appellate review and revision of sentences difficult.

Until recently, the governing appellate rule stated:

(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed.

Rule 2, Indiana Rules for the Appellate Review of Sentences (effective Jan. 1, 1978); Ind. Appellate Rule 17(B) (effective Jan. 1, 1990). The "no reasonable person" provision established an almost impossible standard to meet. *See Fointno*, 487 N.E.2d at 149 (reasonable minds may differ on what sentence is appropriate in any given case). But effective March 1, 1997, our supreme court amended Appellate Rule 17(B) and paragraph (2), including

the "no reasonable person" provision, was deleted. The current Rule 17(B) both permits and invites more meaningful appellate review.

 While we are challenged to articulate appellate standards, the Indiana Constitution specifically charges this court with responsibility to review and revise sentences "to the extent provided by rule." IND. CONST. art. VII, § 6. This authority is found in the text of the Constitution and is independent from our general appellate jurisdiction. Thus, we cannot agree that this court's constitutional mandate to review and revise sentences is as narrowly circumscribed as the dissent suggests. *See Cunningham*, 469 N.E.2d at 8 (although "loath to review any sentence imposed by a trial court" this court is constitutionally mandated to do so).

Here, because we remand for re-sentencing, we need not decide whether Bluck's sentence is manifestly unreasonable. In re-sentencing Bluck, however, the trial court should follow our supreme court's recent instruction that "the maximum sentence enhancement permitted by law ... should ... be reserved for the very worst offenses and offenders.'" *Buchanan v. State*, 699 N.E.2d 655, 657 (Ind. 1998) (quoting *Bacher*, 686 N.E.2d at 802).

Affirmed in part, reversed in part and remanded.

KIRSCH, J., concurs.

GARRARD, J., dissents with separate opinion.

GARRARD, Judge, dissenting

I find the sentencing phase of this case terribly troubling. I have concluded, however, that I must respectfully dissent. As I perceive it, there are two fundamental questions which must be addressed to resolve this appeal.[5]

The first concerns the proper role of an appellate court, especially the intermediate appellate court, in determining the appropriate sentence for a convicted offender. Put somewhat differently, who should have the ultimate discretion to determine the proper sentence? For generations this state held that to be the exclusive province of the trial court. That view was no doubt aided by statutory schemes that simply provided a specific term for a specific offense, and that subsequently provided indeterminate sentences fixed within specific parameters on the theory that penal authorities could best fit the specific term to the particular offender.

The judicial article added to our constitution in 1970 expressly empowered both the supreme court and the court of appeals to review and revise the sentence imposed in all criminal cases.[6] In addition, the criminal code adopted in 1976 greatly expanded the sentencing range available to trial courts by its classification of felonies that were accompanied by a presumptive sentence to which time might be added or subtracted within specified limits based upon aggravating or mitigating factors. Moreover, sentences might be ordered to be served consecutively or concurrently based essentially upon the same factors. It seems to me that a side effect of this sentencing scheme was that it invoked for trial judges the problem often faced by appellate judges, that it may be considerably easier to intuit an appropriate answer than to articulate the reasons for that answer.

With this backdrop it is not surprising that our supreme court adopted the view that while it was necessary for the trial judges to expressly determine aggravating

---

5. Of course our appellate courts have always been willing to address the situation where a penalty imposed is beyond the authority granted by the legislature. Thus for the sake of brevity, I exclude from consideration here those situations and assume throughout a penalty imposed within the guidelines set by the various sentencing statutes.

6. Indiana Constitution art. 7, §§ 4, and 6. The intermediate court is limited to "the extent provided by rule."

and, when appropriate, mitigating factors, a single valid aggravator was sufficient and could be utilized both to enhance a particular sentence and to cause it to be served consecutively with another sentence.[7] Indeed, recent decisions of our supreme court have further deferred to the trial court's discretion by holding that "[w]hen the record indicates that the trial judge engaged in the evaluative processes but simply did not sufficiently articulate his reasons for enhancing the sentence and the record indicates that the sentence imposed was not manifestly unreasonable, then the purposes underlying the specificity requirement have been satisfied." *Mitchem v. State*, 685 N.E.2d 671, 679 (Ind. 1997); *see also Adkins v. State*, 532 N.E.2d 6, 9 (Ind.1989); *Henderson v. State*, 489 N.E.2d 68, 72 (Ind.1986).

Pursuant to its constitutional empowerment the supreme court adopted Appellate Rule 17 providing for appellate review of sentences and prescribing that "[t]he reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable. in light of the nature of the offense and the character of the offender." In interpreting the rule the court has asserted that "the issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Riley v. State*, 711 N.E.2d 489, 496 (Ind. 1999); *see also Thacker v. State*, 709 N.E.2d 3, 10 (Ind.1999); *Brown v. State*, 698 N.E.2d 779, 784 (Ind.1998).

In the relatively few cases in which the court has found a sentence to be manifestly unreasonable, it has often failed to announce the reasons sustaining the reduced sentence it has chosen. Indeed, in *Carter v. State*, 711 N.E.2d 835, 843 (Ind.1999) the court acknowledged that "[r]eduction to something between the presumptive and the maximum imposed by the trial court is necessarily somewhat arbitrary." I can only deduce from this, and the other cases in which the court has actually imposed a different sentence,[8] that the court has concluded that once it has found a particular sentence to be manifestly unreasonable, it is invested with original discretion to determine a proper sentence.[9]

While I certainly concede the authority of our supreme court as the final arbiter of state law sentencing questions to make such reductions, I find it a disquietingly different matter for this court to propose to do so. In my view our role and mandate is to engage in principled decision making. I, frankly, find that role at odds with the notion that two out of three of us sitting as a panel from the total of fifteen judges on this court should exercise what is akin to original discretion to determine the appropriate sentence for a person where we have never seen the defendant or heard any of the witnesses.[10] Therefore, I conclude that while we have the authority to revise sentences, we should not exercise that authority absent the adoption of objective criteria governing the result.[11]

7. Because a great many decisions apply this rule literally, I find the use of adjectives such as "modest" and "substantial" in connection with aggravators or mitigators not very helpful.

8. The exception is *Cooper v. State*, 540 N.E.2d 1216 (Ind.1989) where the court vacated the death penalty for a fifteen year old murderer and held it was bound to impose the longest available term of sentence.

9. In addition to the other benefits of finality, this approach avoids the necessity of instructing a trial court, which has presumably already exercised thoughtful discretion, to do it

over again and arrive at a different conclusion.

10. I realize the likely adoption of the pending constitutional amendment will vest in this court original appellate criminal jurisdiction in all but death penalty cases. Even so, our supreme court will retain its transfer function and may proceed to review any sentence imposed, whether by this court or a trial court, on grounds that it is manifestly unreasonable.

11. By this I do not mean to suggest that we should adopt anything akin to the federal sentencing guidelines, which appear to me to

Having thus attempted to set forth from whence I come, I turn to the particulars of this case.

The majority found three valid aggravators, and I agree.

The majority disallowed the aggravator that Bluck was in need of correctional treatment because he failed to acknowledge his guilt and was therefore a poor candidate for rehabilitation. In so stating the trial court appeared to rely upon an expert witness from other cases. The general view among experts in the child molesting field certainly appears to be that these sex offenders offer little opportunity for rehabilitation unless they admit the wrongness of their conduct and achieve a desire to change. *See, e.g.,* Symposium, *The Science of Sex Offenders: Risk Assessment, Treatment, and Prevention,* 4 PSYCHOL. PUB. POL'Y & L. 50 (1998). Even so, I doubt the matter is the proper subject of judicial notice, and I agree with the majority that sentencing should be based upon factors attributable to the specific defendant rather than statistical "profile" evidence. Furthermore, I agree that broad policy reasons decree that courts should not be permitted to aggravate a sentence on the ground that a defendant continues to maintain his innocence.

The majority found that Bluck was not in a position of special trust and I agree, but it also determined that there were no threats to kill the victim and his family. Perhaps that is technically true, but as I read the record of the sentencing hearing, it appears to me that a fair inference is that the court determined that the threats Bluck employed against his fourteen year old victim not only to hide his crime but to continue the relationship constituted an aggravator. I would agree that it did.

Finally, the majority attaches substantial significance to the fact that the court identified Bluck's lack of criminal history but gave it no weight as a mitigator. I agree that our supreme court has used the

modifier "significant" when addressing this mitigator. On the other hand, writers in the child molesting field believe that child molesting is a very underreported offense and many molesters have committed multiple offenses before ever being charged. *See* Kirk Heilbrun et al., *Sexual Offending: Linking Assessment, Intervention and Decision Making,* 4 PSYCHOL. PUB. POL'Y & L. 138, 140 (1998); Peters–Baker, *Challenging Traditional Notions of Managing Sex Offenders:Prognosis is Lifetime Management,* 66 UMKC L.REV. 629, 641 (1998); Robert Teir & Kevin Coy, *Approaches to Sexual Predators: Community Notification and Civil Commitment,* 23 NEW ENG. J. ON CRIM. & CIV. CONFINEMENT 405, 408 (1997).

Here the trial judge noted that this was Bluck's first *known* conviction, that the offenses here were ongoing in nature and he had three other charges pending with three different victims. Thus, there is a reasonable inference that Bluck's lack of criminal record reflects no more than that he was not previously caught. On this basis I feel the court was justified in discounting Bluck's lack of a prior record to near zero for purposes of mitigation.

Turning to the question of whether the sentence was manifestly unreasonable in light of the nature of the offense and character of the offender, I confess that I have struggled to find a hand hold upon which to proceed. As a matter of personal choice I probably would not have imposed the very maximum available sentence on Bluck and would probably have been content to have the Class C felonies served concurrently with the Class B felonies while aggravating the sentences and causing the Class B felonies to run consecutively. But that is no more than personal assessment and other options appear equally tenable. It does not strike me, however, that my personal reaction at all equates with the necessity that to be manifestly unreasonable the sentence must be "clearly, plainly and obviously so." I have concluded that for *this* court to reverse a sentence as

be both unwieldy and fraught with controversy.

manifestly unreasonable, the determination must be based upon the trial court's necessary reliance on improper aggravators or mitigators not found by the trial court but undisputedly appearing in the record, or upon some other clearly articulable ground such as occurred in *Gregory v. State*, 644 N.E.2d 543 (Ind.1994), where agents of the state procured the defendant to commit the same offense several times over a period of days and then prosecuted for each sale committed.

Here the trial judge found five aggravating factors. I agree with four of them and the majority accepts the existence of three. While the court found Bluck had no prior record under the circumstances it determined that this should be given little or no weight. I agree that was a reasonable finding. What about the nature of the offender and the offense? It seems to me that we know enough to say that such offenders are predators and take advantage of their mature appearance and manner to molest boys and from the nature of their appetites they seek victim after victim. We do not know the extent of psychological damage done to their victims in general or this victim in particular, but we may reasonably presume that substantial damage occurs. In the present case each offense differed, although from the testimony it appeared that each, save one, occurred several times. As found by the trial court, the victim was violated in every way possible sexually. We know that the defendant has been charged with similar offenses involving three other victims. The case is dissimilar to that in *Beno v. State*, 581 N.E.2d 922 (Ind.1991) or *Gregory v. State, supra,* where the state prompted a defendant to commit substantially the same offense (selling drugs) several times over a period of days, and I would find those decisions have no application here.

Perhaps our supreme court will revisit the determination that a single aggravator is sufficient to both enhance sentences and cause them to be served consecutively. But that remains the law today, and in the case before us we are in agreement that the trial judge properly found at least three aggravators. Moreover, because of the heinous nature of the offense and the proclivity of the offenders to perpetrate again and again, I cannot say that the penalty was manifestly unreasonable.

I would affirm the trial court.