



FILED
Jun 30 2020, 12:56 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-CR-281

## Marcus Lee McCain
*Appellant (Defendant below)*

–v–

## State of Indiana
*Appellee (Plaintiff below)*

Argued: June 11, 2020 | Decided: June 30, 2020

Appeal from the Lake County Superior Court,
No. 45G04-1708-MR-6
The Honorable Samuel L. Cappas, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-CR-1113

**Opinion by Justice Massa**

Chief Justice Rush and Justices David, Slaughter, and Goff concur.

**Massa, Justice.**

Marcus Lee McCain was sentenced to forty-five years in prison for killing Marcel Harris in a crowded Gary, Indiana fast-food restaurant. McCain contends that the trial judge—who stated that the jury's voluntary manslaughter verdict was "a gift"—impermissibly increased McCain's sentence based on his beliefs about the case. We disagree. First, we find that the trial court did not abuse its discretion in imposing the sentence. Second, because we determine under Indiana Appellate Rule 7(B) that the sentence is not inappropriate in light of the nature of the offense and McCain's character, we uphold the sentence in its entirety.

## Facts and Procedural History

Around midnight, Marcus Lee McCain, his cousin, and his girlfriend went to Philly Steaks and Fresh Lemonade in Gary, Indiana. McCain lived in Wisconsin and was visiting family in Indiana. Over a dozen people, including two young children, were in the restaurant at the time. While McCain sat awaiting his order, the victim Marcel Harris entered the fast-food restaurant with a group of friends. McCain testified that he noticed Harris was "mean-mugging" him. Tr. Vol. 7, p.29.

When Harris went outside, McCain followed him, even though he had "never met [him] a day in [his] life," and the two exchanged words. Tr. Vol. 6, p.224. Harris returned to the restaurant. McCain then got his cousin, who was waiting in the car, and went back inside. When McCain reentered the restaurant, a fight between McCain and Harris ensued that was recorded in graphic detail by a high-definition surveillance system. According to McCain, when Harris directed one of his friends to "[s]hoot that shit," McCain grabbed a gun from his cousin. Tr. Vol. 7, p.7. Since he figured "it was [his] life or my life" McCain shoved Harris back and placed a gun against his head. *Id.*, pp. 7–8. When Harris tried to swat the gun away, McCain fired a single shot at Harris's temple at close range, instantly killing him in the middle of the restaurant. The bullet lodged itself in the white tile ordering-counter near where two people had been standing only seconds earlier. Following the shooting, McCain and his

companions immediately fled the scene, and McCain ultimately returned to Wisconsin where he was soon identified and arrested after surveillance camera images were released to the media.

The State charged McCain with murder and later added an enhancement for knowingly or intentionally using a firearm in commission of the offense.[1] While McCain's counsel argued at trial that he acted in self-defense, the defense also successfully petitioned the court to include a jury instruction on the lesser-included offense of voluntary manslaughter.[2] The jury found McCain guilty of voluntary manslaughter but not murder. McCain then sought a bench trial on the firearm enhancement's applicability to his manslaughter conviction. After a bench trial, McCain was also convicted of the firearm enhancement. During the bench trial, the judge made multiple comments indicating he believed the defendant should have been convicted of murder by the jury. He called it "the clearest case of . . . cold-blooded murder I've seen in high definition in 32 years" and remarked that "[t]he voluntary manslaughter verdict was a gift." Tr. Vol. 7, pp. 186–87.

At McCain's sentencing hearing a few months later, the judge made similar comments, stating that "[t]he words that the video spoke to me w[ere] cold blooded and callous" and reiterating "that [it] was the cleanest cut video I have ever seen of my impression of a murder." Tr. Vol. 8, pp. 49, 51. However, the court considered numerous aggravating and mitigating circumstances on the record and in a detailed sentencing order.

The trial court found ten applicable aggravating factors existed: (1) the shooting took place in a public environment with fourteen people in close proximity; (2) there were two children present during the shooting; (3) the defendant endangered at least one other person who was within the trajectory of the bullet seconds before the shooting; (4) Harris "was shot at point-blank range with the gun placed to [his] temple"; **(5) the nature of the shooting was "particularly cold-blooded and callous despite the fact**

---

[1]*See* Ind. Code § 35-50-2-3 (murder); I.C. § 35-50-2-11(d) (firearm enhancement).

[2]*See* I.C. § 35-42-1-3.

**that [McCain] was convicted of Voluntary Manslaughter wherein heat of passion was found to be a mitigating circumstance"**; (6) McCain has a criminal history, including two felony convictions; (7) McCain has previously been incarcerated for thirty days, "which has failed to deter him from a life of crime"; (8) McCain has seven to eight contacts with the criminal-justice system, "which reflect adversely on [his] character in that he is not able to live a law-abiding life"; (9) a Facebook post from McCain adversely reflects on his character, as it shows that he invites "violence or conflict"; and (10) McCain is in need of correctional or rehabilitative treatment that can only be provided by a penal facility. *See* Appellant's App. Vol. 3, pp. 142–43 (emphasis added).

The court then considered six mitigating factors proposed by McCain's counsel and found four to be relevant: (1) McCain expressed remorse; (2) approximately thirty people submitted letters on McCain's behalf, however, the court didn't give them much weight because some of the letters described McCain as "peacemaking" but he didn't use those skills on the night of the shooting; (3) McCain has a two-year-old child; however, the court didn't give this much weight either because of his limited involvement with the child, as evidenced, in part, by the lack of any requirement he pay child support; and (4) McCain completed some courses in jail, which was "somewhat of a mitigating factor." *See id.*, pp. 143–44; Tr. Vol. 8, pp. 45–47.

After finding that the aggravators outweighed the mitigators, the trial court sentenced McCain to forty-five years in prison (twenty-seven years for voluntary manslaughter enhanced by eighteen years for using a firearm). McCain then appealed his sentence, arguing that (1) the firearm enhancement was improperly applied to his conviction and (2) the trial court abused its discretion in sentencing when it considered improper aggravators.

The Court of Appeals affirmed McCain's conviction for the firearm enhancement but reduced McCain's sentence to thirty-five years using its authority to revise a sentence under Indiana Appellate Rule 7(B). *See McCain v. State*, 140 N.E.3d 299, 304–05 (Ind. Ct. App. 2020) ("The judge's finding that the killing was '**cold**-blooded' [as an aggravator] is clearly at

odds with the jury's finding that the killing was done in sudden **heat**."), *vacated*. In dissent, however, Judge Tavitas reasoned that the trial judge's stated beliefs did not taint the sentencing decision because the "trial court made it clear that it was following the law and basing the sentence upon [the listed] aggravators and mitigators." *Id.* at 309 (Tavitas, J., dissenting).

We granted transfer, vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).[3]

# Discussion and Decision

Evaluating the appropriateness of McCain's sentence, the Court of Appeals opinion below used its discretionary authority under Indiana Appellate Rule 7(B) to revise McCain's sentence because of the trial judge's perceived lack of impartiality. *See McCain*, 140 N.E.3d at 305 (imposing a new sentence of thirty-five years by exercising the Court's "authority to review and revise the sentence pursuant to Indiana Appellate Rule 7(B)" when it believed the trial judge's sentence "compensate[d] for what he believed to be an erroneous verdict"), *vacated*. We have previously explained, however, that it is under Appellate Rule 7(B) "alone that a criminal defendant may now challenge his or her sentence where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence that is supported by the record, **and the reasons are not improper as a matter of law**, but has imposed a sentence with which the defendant takes issue." *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) (emphasis added), *clarified on reh'g.* So, Rule 7(B) is not for correcting actual error in trial court sentencing.

---

[3] While the Court of Appeals opinion below addressed both the applicability of the statutory firearm enhancement to McCain's crime as well as the appropriateness of his sentencing, today we address only the sentencing issue. "Part I," then, of the Court of Appeals holding below—finding the firearm enhancement applicable to McCain's voluntary manslaughter conviction—is summarily affirmed under Indiana Appellate Rule 58(A)(2).

While abuse-of-discretion review in sentencing generally requires a remand to the same trial court for correction after an error is found, *see McCann v. State*, 749 N.E.2d 1116, 1121 (Ind. 2001) ("[W]e will remand for resentencing if we cannot say with confidence that the trial court would have imposed the same sentence if it considered the proper aggravating and mitigating circumstances."), our case law has carved out a limited exception for when a trial court has abused its discretion by exhibiting bias, instead of simply making a mistake, *see, e.g., Phelps v. State,* 24 N.E.3d 525, 529 (Ind. Ct. App. 2015) (ordering a two-year sentence reduction because the trial court "abused its discretion"). Therefore, we must first analyze McCain's sentence for abuse of discretion and then conduct a separate, second review of the sentence's appropriateness under Indiana Appellate Rule 7(B).

## I. The trial court did not abuse its discretion when sentencing McCain.

We have long held that a trial judge's sentencing decisions are reviewed under an abuse of discretion standard. *Anglemyer,* 868 N.E.2d at 490. "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)) (cleaned up). When sentencing, a trial court abuses its discretion if it, among other things, "considers reasons that 'are improper as a matter of law.'" *Buford v. State*, 139 N.E.3d 1074, 1081 (Ind. Ct. App. 2019) (quoting *Anglemyer*, 868 N.E.2d at 491).

At issue here is whether the trial court, when imposing its sentence, relied on a legally "improper aggravator based in its disagreement with the jury's verdict." Appellant's Br. in Opp. to Trans. at 8. Specifically, McCain argues the trial judge's comments—indicating that the manslaughter verdict was "a gift" and that the evidence presented "the cleanest cut video I have ever seen of my impression of murder"—are evidence that the judge improperly imposed his own beliefs during sentencing. Tr. Vol. 7, p.187; Tr. Vol. 8, p.51. McCain argues that this belief

was formally manifested in an aggravating factor which referred to the "cold-blooded and callous [nature of the killing] despite the fact that the defendant was convicted of Voluntary Manslaughter." Appellant's App. Vol. 3, p.143. Because voluntary manslaughter requires the jury find the killing was committed in "sudden heat," *see* Ind. Code § 35-42-1-3, McCain contends that this aggravator would always be antithetical to the nature of the offense.

Four decisions by this Court from the 1980s explain the still-applicable framework for addressing questions about a judge's sentencing motivations in the context of voluntary manslaughter verdicts. First, in 1982, we found the trial court abused its discretion in sentencing for a voluntary manslaughter conviction. *Gambill v. State*, 436 N.E.2d 301, 304–05 (Ind. 1982). In *Gambill*, the trial court imposed the maximum sentence for voluntary manslaughter—stating at sentencing that "I think it was not the right verdict." *Id*. at 304. While the trial judge purported to rely on two aggravators, we found the judge "merely repeat[ed] . . . conclusory language" in justifying the sentence "without stating the facts through which the conclusions were reached." *Id.* The dearth of reasoning supporting the sentence, combined with the trial court's statements, led us to conclude it was "clear that the trial court enhanced the sentence to compensate for what he believed to be an erroneous verdict." *Id.* at 305. Because "any enhancement by [the trial judge after this ruling] would be suspect," we justified a rare departure from our "customary" practice of remanding to the trial court for resentencing and instead ordered the then-presumptive sentence be used. *Id.*

We again reversed a trial judge's sentencing decision and imposed the presumptive sentence for voluntary manslaughter in *Hammons v. State*, 493 N.E.2d 1250, 1253 (Ind. 1986). During the first sentencing hearing, the trial judge failed to provide facts that "supported enhancement of the sentences" and expressly stated that his decision imposing an enhanced sentence was predicated on there being "ample evidence to justify a finding on the murder count itself." *Id.* at 1252, 1251. When the case was remanded for resentencing, the trial judge again stated his disagreement with the jury's verdict, but he also provided a detailed list of aggravating and mitigating factors supporting his sentencing decision. *Id.* at 1251.

Nevertheless, he chose to impose the exact same sentence. *Id.* at 1253. Because the resentencing merely attempted to cloak and provide justification for what the trial court had already decided, "[w]e conclude[d] that this action is more like the act of compensation for the jury's decision apparent in *Gambill*." *Id.*

Similarly, in 1987, we acknowledged that "[w]hile a trial judge is not prohibited from expressing his personal disagreement with a jury's verdict, a trial judge is prohibited from enhancing a defendant's sentence based upon his personal disagreement with the verdict." *Hamman v. State*, 504 N.E.2d 276, 278 (Ind. 1987). After the sentencing judge in *Hamman* made statements on the record indicating that the evidence supported a murder conviction, not just voluntary manslaughter, we reduced the defendant's sentence. *Id.* at 278–79. In support, we cited three evidentiary factors: (1) the hostility toward the verdict expressed "by condemning as totally unsupported" the jury's finding of sudden heat, (2) the "improperly introduced" sentencing range for attempted murder at the hearing, and (3) the failure to provide a detailed docket entry supporting his conclusions "which would justify an enhanced sentence." *Id.*

But, when a trial court imposed an enhanced sentence for voluntary manslaughter, we found that the judge's stated skepticism toward the jury's conviction was insufficient to "constitute an invasion of the province of the jury or render the [five-year] enhancement suspect." *Wilson v. State*, 458 N.E.2d 654, 655–56 (Ind. 1984) (The trial judge stated at sentencing that the "brillian[t]" performance of defendant's lawyer, which convinced the jury to drop a murder charge, did "not change the brutal nature of this killing."). We found no clear abuse of discretion because (1) the judge's comments were not "so resolutely opposed to the jury verdict as was the case in *Gambill*," (2) at least implicitly, some credit should be given to the judge's contemporaneous statement that he would "filter out those personal feelings from the sentencing," and (3) the judge's view was supported by a reasoned analysis of aggravating and mitigating factors. *Id.*

Altogether, these cases illustrate that examining a judge's sentencing decision for impermissible motives is a highly fact specific inquiry.

Applying the factors explained above, we determine that the judge's comments here, though coming **very** close to the line, are insufficient to demonstrate that the judge abused his discretion when viewed in the context of the record as a whole. While the sentencing judge made several comments on the record that clearly show he personally disagreed with the verdict, a judge "is not prohibited from expressing his personal disagreement," ), *Hamman*, 504 N.E.2d at 278, though for obvious reasons we highly discourage that practice. The record contains several other evidentiary factors that demonstrate the trial judge did not enhance the sentence based on his disagreement with the jury verdict.

First, unlike in *Gambill, Hammons*, and *Hamman*, the judge's initial sentencing decision included a careful, detailed discussion of ten aggravating factors and six potential mitigating factors (ultimately accepting only four), both at the hearing and in a detailed sentencing order. *See Gambill*, 436 N.E.2d at 305 (listed aggravators contained merely "conclusory language"); *Hammons*, 493 N.E.2d at 1251, 1253 (judge's first sentencing order failed to provide aggravators); *Hamman*, 504 N.E.2d at 279 (record did "not disclose specific conclusions" justifying the sentence enhancement). While not completely dispositive, the judge's detailed attempt at showing his work goes a long way in demonstrating that his personal feelings were not driving the decision.

Second, like in *Wilson*, and in contrast to *Gambill*, *Hammons*, and *Hamman*, McCain did not receive the maximum possible sentence for his crimes, and the sentence is substantially lower than what he would have received for murder. *Compare Wilson*, 458 N.E.2d at 654 (trial court "add[ed] five years to the basic sentence" for voluntary manslaughter), *with Gambill*, 436 N.E.2d at 305 (imposing the then-maximum sentence), *Hammons*, 493 N.E.2d at 1251 (same), *and Hamman*, 504 N.E.2d at 277 (same). With his criminal record, McCain faced an advisory sentence of at least twenty-two-and-a-half years for his convictions before any of the aggravating and mitigating circumstances were considered. *See* I.C. §§ 35-50-2-4.5 (advisory sentence for voluntary manslaughter is seventeen-and-a-half years), -11(g) (the court could add at least five years for the firearm enhancement). While McCain's counsel took issue with how some of these aggravators were broken out and weighed in the trial court's analysis, he

essentially conceded that all but one of the aggravators had a valid factual basis, so a heightened sentence should be expected. The forty-five-year sentence the trial court imposed is five years short of the maximum. *See* I.C. §§ 35-50-2-4.5 (maximum sentence for voluntary manslaughter is thirty years), -11(g) (the court could add up to twenty years for the firearm enhancement). It is also significantly more lenient, given the number of aggravating factors, than what McCain would have likely received if he had been convicted of both the firearm enhancement, *see* I.C. § 35-50-2-11(g) (between "five years and twenty years"), and murder, *see* I.C. § 35-50-2-3 (between forty-five and sixty-five years with an advisory sentence of fifty-five years). The forty-five-year sentence length does not evince an improper motive.

Third, again like in *Wilson*, the trial judge made statements—both at the hearing and in the sentencing document—clarifying he would filter out his personal feelings. *See Wilson*, 458 N.E.2d at 655. Appellant's App. Vol. 3, p.144 ("The Court acknowledges that the jury found the defendant guilty of Voluntary Manslaughter. To be clear, **the Court is not assessing this sentencing as that of a murder case or using the factors of a murder to elevate the sentence of Voluntary Manslaughter.**") (emphasis added). While this disclaimer is not a magic phrase inoculating the trial court from scrutiny, it weighs against a finding of bias. It also distinguishes this case from cases like *Hammons*, where the judge based his first sentencing decision explicitly on "ample evidence . . . justify[ing] a finding on the murder count itself." 493 N.E.2d at 1251.

Finally, we need not decide the validity of the disputed aggravator—citing the "cold-blooded and callous" nature of the killing—because we find any error stemming from its inclusion was harmless. Appellant's App. Vol. 3, p.143 The thrust of this disputed aggravator is captured, less controversially, in the preceding aggravating circumstance finding the heinous nature of the shooting to be significant. *See* Appellant's App. Vol. 3, p.142. ("The victim was shot at point-blank range with the gun placed to the victim's temple."). Both these aggravators represent a legitimate view that the nature and circumstance of this killing differentiates its heinousness from other heat-of-passion homicides. Our precedent is clear: "[e]ven when a trial court improperly applies an aggravator, a sentence

enhancement may be upheld if other valid aggravators exist." *Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002) (citation omitted). When an improper aggravator is used, we remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence if it considered the proper aggravating and mitigating circumstances." *McCann*, 749 N.E.2d at 1121 (citations omitted). Given the similarity between these two aggravators, remand is unnecessary.

## II. Appellate Rule 7(B) relief is denied because a forty-five-year sentence is not inappropriate in light of the nature of McCain's offense and his character.

Even after determining that the trial court did not abuse its discretion in sentencing, McCain is still entitled to independent appellate review of his sentence under Indiana Appellate Rule 7(B). *See, e.g.*, *Hammons*, 493 N.E.2d at 1255–56 (conducting an independent appellate sentence review—under the old manifestly unreasonable standard[4]—after first reviewing the sentence's lawfulness under an abuse of discretion standard). The rule provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B). This "appellate review and revise authority derive[s] from Article 4 of the Indiana Constitution, [and] includes the power to either reduce or increase a criminal sentence on appeal." *McCullough v. State*, 900 N.E.2d 745, 750 (Ind. 2009).

"The principal role of appellate review is to attempt to leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The point is

---

[4]At the time, our appellate rules permitted reviewing courts to revise a sentence if it was "manifestly unreasonable." The current version of Indiana Appellate Rule 7(B), effective January 1, 2003, allows us to revise sentences that are "inappropriate."

"not to achieve a perceived correct sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quotation omitted). "[A]ppellate review and revision ultimately boils down to the appellate court's collective sense of what is appropriate." *Brown v. State*, 10 N.E.3d 1, 8 (Ind. 2014) (quotation omitted). Whether a sentence should be deemed inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

We do not find McCain's forty-five-year sentence to be inappropriate. The character of the offender weighs heavily in favor of an enhanced sentence. McCain's extensive history of felony and misdemeanor convictions—though non-violent—still weighs against his character, as does his Facebook post showing a desire for violent conflict. *See Frentz v. State*, 875 N.E.2d 453, 473 (Ind. Ct. App. 2007) (noting that repeated substance abuse misdemeanors, prior to the violent crime at issue, indicate defendant "had learned very little" and evinced his poor character). While McCain's expression of remorse, his letters of support, his relationship with his young child, and his completion of jail programing provide some limited rehabilitation of his character, we agree with the trial court that they do not offset the overall nature of McCain's character as demonstrated through his behavior.

The nature of the offense—a point-blank shooting of a complete stranger in a crowded fast-food restaurant after getting into an argument because someone looked at him sideways—weighs heavily in favor of an enhanced sentence. Especially true when one considers how he endangered the lives of others present and likely forever scarred young children who were forced to witness, from only a few feet away, a fatal gunshot to Harris's temple. *See Hape v. State*, 903 N.E.2d 977, 1003 (Ind. Ct. App. 2009) (citing endangerment of the public during a police chase as a factor justifying an enhanced sentence under 7(B)); *see also* I.C. § 35-38-1-7.1(a)(4) (enumerating "knowingly commit[ing] the offense" in the presence of a child as a statutory aggravator). Following the shooting, McCain immediately fled the crime scene and left the state before being arrested. *See McGaha v. State*, 926 N.E.2d 1050, 1058 (Ind. Ct. App. 2010)

(finding on 7(B) review that fleeing after a homicide helps support an enhanced sentence).

After considering these and other facts, including four mitigating circumstances, the trial court imposed a forty-five-year sentence (twenty-seven years for voluntary manslaughter and eighteen for the firearm enhancement). The overall length of McCain's sentence is not an outlier given the nature of the offense and the character of the offender. *See, e.g.*, *Eversole v. State*, 873 N.E.2d 1111, 1113–14 (Ind. Ct. App. 2007) (upholding a thirty-year sentence for voluntary manslaughter—without a firearm enhancement—as appropriate under 7(B) even though defendant, who killed his wife's lover with a single gunshot, had no criminal record and possessed "good character"), *trans. denied*.

# Conclusion

Because the trial court's comments disagreeing with the jury's verdict were insufficient to taint the sentencing decision, and the sentence was not inappropriate given the nature of the crime and McCain's demonstrated character, we affirm the trial court's judgement in its entirety, including the forty-five-year sentence.

Rush, C.J., and David, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Paul G. Stracci
James M. Woods
Stracci Law Group, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Chief Counsel, Appeals Division
Indianapolis, Indiana

Courtney L. Staton
James T. Whitehead
Deputy Attorneys General
Indianapolis, Indiana